THE STATE OF OHIO, APPELLEE, *v.* HUMPHRIES, APPELLANT.
THE STATE OF OHIO, APPELLANT, *v.* MEYER, APPELLEE.

[Cite as State v. Humphries (1977), 51 Ohio St. 2d 95.]

(Nos. 76-1150 and 76-1318—Decided July 20, 1977.)

*Messrs. Tyack, Scott, Grossman & Wiseman* and *Mr. G. Gary Tyack,* for appellant Humphries.

*Mr. James A. Berry,* prosecuting attorney, and *Mr. James N. Griffin,* for appellant state of Ohio.

*Mr. George C. Smith,* prosecuting attorney, and *Mr. Alan C. Travis,* for appellee state of Ohio.

*Messrs. Acton, Dunn Busch & Flack* and *Mr. Edward W. Dunn,* for appellee Meyer.

SWEENEY, J. In Ohio, the common-law rule has been that in a criminal case the defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence to overcome the presumption that he is sane.[1]

However, effective January 1, 1974, R. C. 2901.05 was enacted, which reads in part:

"(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof is upon the prosecution. The burden of going forward with the evidence of an affirmative defense is upon the accused."

In *State* v. *Robinson* (1976), 47 Ohio St. 2d 103, this court stated that the General Assembly, in enacting R. C. 2901.05, adopted the majority rule with respect to affirmative defenses, requiring that the state bear the burden of persuasion beyond a reasonable doubt upon every issue necessary to convict, while imposing upon the defendant the burden of coming forward with evidence sufficient to raise an affirmative defense. Although the court, in its historical analysis of affirmative defenses in Ohio, included the defense of insanity in its discussion, it limited its holding to the defense of self-defense.

Therefore, in reviewing the present causes, the court

---

[1] *Farrer* v. *State* (1853), 2 Ohio St. 54; paragraph nine of the syllabus in *Loeffner* v. *State* (1857), 10 Ohio St. 598; *Silvus* v. *State* (1871), 22 Ohio St. 90; paragraph six of the syllabus in *Bond* v. *State* (1872), 23 Ohio St. 349; paragraph three of the syllabus in *Bergin* v. *State* (1876), 31 Ohio St. 111; paragraph one of the syllabus in *Kelch* v. *State* (1896), 55 Ohio St. 146; paragraph two of the syllabus in *State* v. *Austin* (1905), 71 Ohio St. 317; paragraph one of the syllabus in *State* v. *Hauser* (1920), 101 Ohio St. 404; paragraph one of the syllabus in *Rehfeld* v. *State* (1921), 102 Ohio St. 431; paragraph three of the syllabus in *State* v. *Stewart* (1964), 176 Ohio St. 156; paragraph two of the syllabus in *State* v. *Staten* (1969), 18 Ohio St. 2d 13; paragraph two of the syllabus in *State* v. *Staten* (1971), 25 Ohio St. 2d 107; *State* v. *Anders* (1972), 29 Ohio St. 2d 1; paragraph four of the syllabus in *State* v. *Johnson* (1972), 31 Ohio St. 2d 196; *State* v. *Jackson* (1972), 32 Ohio St. 2d 203.

is directly confronted with the issue of whether a defendant, having plead not guilty by reason of insanity to overcome the presumption of sanity arising under R. C. 2943.03, has the burden of proving insanity by a preponderance of the evidence, or whether, under R. C. 2901.05(A), a defendant bears only the burden of going forward with sufficient evidence of insanity to raise the issue, whereupon the prosecution must prove sanity beyond a reasonable doubt.

R. C. 2901.05 defines an "affirmative defense" as either "a defense expressly designated as affirmative" or "a defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence."

The defense of insanity is clearly within the statutory definition since the defense is based on an excuse, of which the defendant has special knowledge for which he can produce evidence.

Moreover, the existing common law at the time of the passage of R. C. 2901.05 indicates that the defense of insanity was considered as one of the affirmative defenses which the General Assembly subsequently discussed in drafting new legislation concerning the burden of proof to be placed upon the defendant. In *State* v. *Poole* (1973), 33 Ohio St. 2d 18, 19, this court noted that the defense of insanity, as well as the defenses of self-defense, duress, and intoxication, were among those affirmative defenses which " * * * represent not a mere denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged, but, rather * * * represent a substantive or independent matter 'which the defendant claims exempts him from liability even if it is conceded that the facts claimed by the prosecution are true.' "

The understanding of the General Assembly that the defense of insanity commonly was included in the phrase "affirmative defense" is demonstrated by the fact that the Ohio House at one time planned to specifically exclude the defenses of intoxication and insanity from

new legislation which placed upon the defendant only the burden of going forward with the evidence to prove an "affirmative defense." *Robinson, supra,* fn. 10, at page 110. Because the final version of R. C. 2901.05 deleted such an exclusion clause, it can reasonably be concluded that the General Assembly, given its understanding of the existing common law, intended that the defenses of insanity and intoxication be included as "affirmative defenses" as that phrase is used in R. C. 2901.05.

Thus, this court concludes that the clear language of the statute, the Ohio common law as to affirmative defenses existing at the time of enactment of the statute, and the legislative history of the statute, indicate that the defense of insanity is among those "affirmative defenses" referred to in R. C. 2901.05.

Therefore, the Court of Appeals for Clark County in *State* v. *Meyer,* case No. 76-1318, in reversing the judgment of the trial court, correctly held that the provisions of R. C. 2901.05 do apply to the affirmative defense of insanity.

However, the Court of Appeals for Franklin County held in *State* v. *Humphries* that the defense of insanity is not affected by the provisions of R. C. 2901.05(A). The court noted that, although R. C. 2901.05(A) places the burden of going forward with the evidence of an affirmative defense upon the accused, it does not indicate to what degree the defendant has such burden. The court found language in *Robinson, supra,* to be controlling, which states, in effect, that if the General Assembly had intended to impose the burden of persuasion as well as the burden of going forward with the evidence upon the defendant with respect to a particular affirmative defense, it would have done so. Thus, in the case of self-defense, where there is no other statute which would indicate that the General Assembly had intended to impose a greater degree of proof on the defendant, the Court of Appeals reasoned that the defendant need only come forth with evidence of a nature and quality sufficient to raise the issue under R. C.

2901.05. However, in the case of insanity, the Court of Appeals found that R. C. 2945.39 does indicate the intent of the General Assembly to impose a higher degree of proof on a defendant raising the defense of insanity. We disagree.

R. C. 2901.05(A) indicates to what degree the defendant must prove an affirmative defense. As this court has stated in *Robinson, supra,* at page 110:

"* * * The assignment of the burden of going forward with evidence of an affirmative defense has acquired a well-recognized meaning in American jurisprudence, and there can be no substantial doubt that the General Assembly intended to adopt the majority rule." At pages 108-109, the court sets forth the majority view in the following manner.

"* * * That approach is to require the state to bear the burden of persuasion beyond a reasonable doubt upon every issue necessary to convict, and to impose upon the defendant the burden of coming forward with evidence sufficient to raise any affirmative defense. The state need not disprove an affirmative defense unless the defendant comes forward with evidence sufficient to raise that defense, and the defendant is not required to prove the mitigating circumstances of his affirmative defense by a preponderance of the evidence, 'but need only introduce evidence of such circumstances to raise a reasonable doubt of his guilt.' "

Therefore, the holding by the Court of Appeals for Franklin County that R. C. 2901.05 does not specify the degree of proof necessary to successfully raise an affirmative defense is in error.

Furthermore, we disagree with that court's interpretation of R. C. 2945.39, which provides, in part:

"When a defendant pleads 'not guilty by reason of insanity,' and is acquitted on the sole ground of his insanity, such fact shall be found by the jury in its verdict."

The Court of Appeals for Franklin County concluded that because the statute requires the jury to make a special finding of fact, that it was obvious that such finding required

the jury to decide by a preponderance of the evidence whether the defendant was insane.

. Nowhere does R. C. 2945.39 place upon the defendant, either directly or indirectly, a certain degree of proof to overcome the presumption of sanity. Rather, the statute only involves requiring the jury to specifically note their finding of insanity on the verdict form, which serves to notify the court that it must then direct that the accused be confined to Lima State Hospital. Indeed, the statutory language cited by the Court of Appeals could just as well have applied in the situation where the defendant must prove insanity beyond a reasonable doubt, since the requirement of making a finding of fact, rather than indicating the degree of proof involved, simply indicates the final result or decision of the jury.

This conclusion as to the import of R. C. 2945.39 is strengthened by the fact that the General Assembly, in the process of drafting R. C. 2901.05, considered adopting a specific section which would have required the defendant to prove insanity by a preponderance of the evidence, indicating that the General Assembly never considered R. C. 2945.- 39 to have placed upon the defendant the burden of proving insanity by a preponderance of the evidence.

Therefore, the Court of Appeals for Franklin County in case No. 76-1150, *State* v. *Humphries,* incorrectly held that the trial court submitted proper jury instructions regarding the affirmative defense of insanity.

Although error may have occurred at the trial court level in the instant causes, this court notes that appellate courts are not required to consider such error on appeal where counsel fails to take proper steps to preserve his objection. Paragraph one of the syllabus in *State* v. *Williams* (1977), 51 Ohio St. 2d 112.

In the *Humphries* case, the Court of Appeals held, as an additional reason for affirming the judgment of the trial court, that the defense, in failing to object to error in the jury instructions as required under Crim. R. 30, waived any objection to such error on appeal. The defense

raised no objection to the application of Crim. R. 30 in its submitted brief to this court, and we find no misapplication of the rule or abuse of discretion on the part of the Court of Appeals in applying the rule to this cause.

In the *Meyer* case, we note that the trial, upon request of the defendant, was conducted without a jury. Crim. R. 30, therefore, does not apply, since the rule only affects jury trials. Furthermore, error was properly preserved under App. R. 12(A), since the defendant in her brief to the Court of Appeals for Clark County, specifically made an assignment of error alleging that the trial judge incorrectly placed upon the defendant the burden of proving the affirmative defense of insanity by a preponderance of the evidence. Since the defendant made the proper assignment of error, the Court of Appeals, under App. R. 12(A), was required to hear and decide the issue, which it properly did.

In conclusion, this court holds the following.

Notwithstanding that the trial court in *State* v. *Humphries,* case No. 76-1150, incorrectly instructed the jury that the defendant has the burden of persuasion in proving the affirmative defense of insanity, the Court of Appeals for Franklin County correctly held that the defendant, by failing to object to the jury instruction, waived the error on appeal. Therefore, the judgment of the Court of Appeals for Franklin County is affirmed.

Because the Court of Appeals for Clark County correctly applied R. C. 2901.05 to the affirmative defense of insanity, which section came into effect on January 1, 1974, the judgment in *State* v. *Meyer,* case No. 76-1318, is also affirmed.

> *Judgment affirmed in case No. 76-1150.*
> *Judgment affirmed in case No. 76-1318.*

O'NEILL, C. J., HERBERT, W. BROWN and P. BROWN, JJ., concur.

CELEBREZZE and LOCHER, JJ., concur in the judgment in case No. 76-1150, but dissent in case No. 76-1318.

HERBERT, J., concurring. In writing for the majority, Justice Sweeney has stated the *ratio decidendi* for the court's holding in *State* v. *Robinson* (1976), 47 Ohio St. 2d 103. Although the dissenters herein contest the validity of the court's conclusion in that regard, the question is settled in Ohio unless the General Assembly re-amends the statutory law.

This concurrence stems from my fear that the opinion in *Mullaney* v. *Wilbur* (1975), 421 U. S. 684 (see *Robinson supra*, fn. 11), is not only subject to misinterpretation, but has in fact been misconstrued by a significant portion of our legal community.

The following is offered as being enlightening and as an encouragement to peruse the full text of the source opinion:

"We thus decline to adopt as a constitutional imperative, operative country-wide, that a State must disprove beyond reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused. Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch. We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. *Proof of the non-existence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here.*

"This view may seem to permit state legislatures to reallocate burdens of proof by labeling as affirmative defenses at least some elements of the crimes now defined in their statutes. But there are obviously constitutional limits beyond which the States may not go in this regard. '[I]t is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime.' *McFar-*

*land* v. *American Sugar Refining Co.*, 241 U. S. 79, 86 (1916). The legislature cannot 'validly command that the finding of an indictment, or mere proof of the identity of the accused, should create a presumption of the existence of all the facts essential to guilt.' *Tot* v. *United States*, 319 U. S. 463, 469 (1943). See also *Speiser* v. *Randall*, 357 U. S. 513, 523-525 (1958). *Morrison* v. *California*, 291 U. S. 82 (1934), also makes the point with sufficient clarity.

"Long before *Winship* [*In re Winship*, 397 U. S. 358, 364 (1970)], the universal rule in this country was that the prosecution must prove guilt beyond reasonable doubt. At the same time, the long-accepted rule was that it was constitutionally permissible to provide that various affirmative defenses were to be proved by the defendant. This did not lead to such abuses or to such widespread redefinition of crime and reduction of the prosecution's burden that a new constitutional rule was required. This was not the problem to which *Winship* was addressed. Nor does the fact that a majority of the States have now assumed the burden of disproving affirmative defenses—for whatever reasons—mean that those States who strike a different balance are in violation of the Constitution.

" * * *

"*Mullaney's* holding, it is argued, is that the State may not permit the blameworthiness of an act or the severity of punishment authorized for its commission to depend on the presence or absence of an identified fact without assuming the burden of proving the presence or absence of that fact, as the case may be, beyond reasonable doubt. In our view, the *Mullaney* holding should not be so broadly read. The concurrence of two Justices in *Mullaney* was necessarily contrary to such a reading; and a majority of the Court refused to so understand and apply *Mullaney* when *Rivera* [*Rivera* v. *Delaware*, 429 U. S. 877 (1976), 97 S. Ct. 226], was dismissed for want of a substantial federal question.

"*Mullaney* surely held that a State must prove every ingredient of an offense beyond a reasonable doubt, and

that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense. This is true even though the State's practice, as in Maine, had been traditionally to the contrary. Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause.

"It was unnecessary to go further in *Mullaney*. The Maine Supreme Court made it clear that malice aforethought, which was mentioned in the statutory definition of the crime, was not equivalent to premeditation and that the presumption of malice traditionally arising in intentional homicide cases carried no factual meaning insofar as premeditation was concerned. Even so, a killing became murder in Maine when it resulted from a deliberate, cruel act committed by one person against another, 'suddenly, and without any, or without considerable, provocation.' *State* v. *Lafferty, supra* [309 A. 2d 647 (1973)]. Premeditation was not within the definition of murder; but malice, in the sense of the absence of provocation, was part of the definition of that crime. Yet malice, *i. e.*, lack of provocation, was presumed and could be rebutted by the defendant only by proving by a preponderance of the evidence that he acted with heat of passion upon sudden provocation. In *Mullaney* we held that however traditional this mode of proceeding might have been, it is contrary to the Due Process Clause as construed in *Winship*. * * *" (Emphasis added.)

The above-quoted observations are from *Patterson* v. *New York* (1977), 45 U. S. L. W. 4708, 4711-13. An additional discussion of *Mullaney* appears in *Hankerson* v. *North Carolina* (1977), 45 U. S. L. W. 4717, 4720. Of particular interest is footnote number eight in *Hankerson*:

"Moreover, we are not persuaded that the impact on the administration of justice in those States that utilize the sort of burden-shifting presumptions involved in this case will be as devastating as respondent asserts. If the validity of such burden-shifting presumptions was as well settled in

the States that have them as respondent asserts, then it is unlikely that prior to *Mullaney* many defense lawyers made appropriate objections to jury instructions incorporating those presumptions. Petitioner made none here. The North Carolina Supreme Court passed on the validity of the instructions anyway. *The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error. See, e. g., Fed. Rule Crim. Proc. 30."* (Emphasis added.)

As I read these latest pronouncements from the high court, nothing in the United States Constitution forbids the Ohio General Assembly's reinstitution, by statutory enactment, of the common law which *Robinson* held was supplanted by R. C. 2901.05.

O'NEILL, C. J., concurs in the foregoing concurring opinion.

CELEBREZZE, J., concurring in the judgment in case No. 76-1150 and dissenting in case No. 76-1318. I write separately only to express my utter disbelief that the General Assembly ever envisioned the majority's extended application of the controversial statutory interpretation rendered by this court in *State v. Robinson* (1976), 47 Ohio St. 2d 103.

It is well to note that the majority decision does not intimate that the Due Process Clause of the Fourteenth Amendment to the United States Constitution precludes placing upon the criminal defendant the burden of proving an asserted defense of insanity. Indeed, the United States Supreme Court, in *Leland v. Oregon* (1952), 343 U. S. 790, held that a state statute which cast upon a defendant the heavy burden of proving his insanity beyond a reasonable doubt did not violate due process where, under other statutory requirements, the state had the burden of proving every element of the crime charged beyond a reasonable doubt, including, in the case of first degree murder, premeditation, deliberation, malice and intent.

The United States Supreme Court was recently confronted with an issue similar to the one decided in *Leland, supra.* The Supreme Court of Delaware in *Rivera v. State* (1976), 351 A. 2d 5C1, sustained the constitutionality of a state statute requiring a criminal defendant raising an insanity defense to prove mental illness or defect by a preponderance of the evidence. The defendant perfected an appeal to the high court, and in *Rivera v. Delaware* (1976), 429 U. S. 877, that appeal was dismissed for want of a substantial federal question. As Mr. Justice Brennan once observed, "[v]otes to affirm summarily, and to dismiss for want of substantial federal question, it hardly needs comment, are votes on the merits of a case * * *." *Ohio, ex rel. Eaton, v. Price* (1959), 360 U. S. 246, 247.

"* * * Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch. We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case * * *." *Patterson v. New York* (1977), 45 U. S. L. W. 4708, 4711. Nevertheless, despite the lack of any federal constitutional requirement that would compel such a holding, and despite the vague language of R. C. 2901.05 (A), assurances to the contrary notwithstanding, the majority today strides forward into a brave new world of criminal justice, wherein the prosecution must conclusively prove, beyond a reasonable doubt, that every lawbreaker was sane at the time of the commission of his offense.

In his dissent to the opinion in *Leland, supra,* Mr. Justice Frankfurter, at page 803, stated the following:

"One does not have to echo the scepticism uttered by Brian, C. J., in the fifteenth century, that 'the devil him-

self knoweth not the mind of men' to appreciate how vast a darkness still envelopes. man's understanding of man's mind. Sanity and insanity are concepts of incertitude. They are given varying and conflicting content at the same time and from time to time by specialists in the field. * * *"

Today the expert opinion of the psychiatrist or psychologist as to whether the defendant was "sane" at the time of his offense continues to be based upon subjective interpretations of an individual's mental state. The opinion of the clinician is premised in large part upon what the subject relates to him, and it would seem that the final conclusion can represent no more than a balance of probabilities.

In their popular college textbook, *Theories of Personality* (2 Ed. 1970), Hall and Lindzey examine 13 major theories of behavior which currently enjoy some degree of professional acceptance. In the final chapter of their text the authors attempt to place the various theories in perspective. Their efforts lead them to conclude, at page 599:

"* * * although there are similarities and convergences among theories of personality, the diversities and disagreements remain striking. In spite of the clustering about certain model theoretical positions there has been, as yet, little progress in the direction of developing a single widely accepted theoretical position. One may indeed wonder at the apparently endless ingenuity of psychologists in devising new ways of viewing or ordering the phenomena of behavior."

I think it apparent that there will rarely be a case in which an expert defense witness will be unable to raise a reasonable doubt by the expression of a highly subjective opinion as to the probability of the defendant's "insanity" at the time of the commission of his offense. The prosecution will then be required to disprove the existence of this nebulously defined state of mind beyond a reasonable doubt.

I cannot countenance the placing of this additional burden upon the prosecutors of this state, and I therefore dissent from the majority opinion herein.

LOCHER, J., concurring in the judgment only in case No. 76-1150 and dissenting in case No. 76-1318. The General Assembly has the power to enact laws which modify or abrogate the common law. *In re Estate of McWilson* (1951), 155 Ohio St. 261. However, the intention to modify or abrogate the common law must be manifested by express language of the statute. Abrogation of the common law by implication is not permitted, *Smith* v. *United Properties, Inc.* (1965), 2 Ohio St. 2d 310.

The common-law rule in Ohio is that every person who has arrived at the age of accountability is presumed to be of sound mind and responsible for his acts until the opposite condition of the mind is proven. It has thus been held that this presumption of sanity exists until the defendant can establish the contrary by a preponderance of the evidence. *Clark* v. *State* (1843), 12 Ohio 483; *Loeffner* v. *State* (1858), 10 Ohio St. 598; *Bergin* v. *State* (1877), 31 Ohio St. 111; *Kelch* v. *State* (1896), 55 Ohio St. 146; *State* v. *Austin* (1905), 71 Ohio St. 317; *State* v. *Johnson* (1972), 31 Ohio St. 2d 106.

The majority's decision continues to expound the statutory aberration of *State* v. *Robinson* (1976), 47 Ohio St. 2d 103, and indulges in the pernicious extension of that holding to the affirmative defense of insanity.

R. C. 2901.05 reads, in pertinent part:

"(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof is upon the prosecution. The burden of going forward with the evidence of an affirmative defense is upon the accused."

A perusal of the preceding statutory language demonstrates no expressed intention to change the existing common law. Instead, the statute consistent with the common law imposes upon the defendant the burden of going forward with the affirmative defense. The General Assembly is a literate body, and, if they desired to abolish over 100 years of common law, they had only to explicitly and succinctly so state. Such a statement is plainly absent from

the wording of this statute. Moreover, the legislative background and history of R. C. 2901.05(A) is suggestive that any attempt to abrogate this common-law rule did not survive in the final draft of the legislation.[2]

The majority's decision judicially creates another element of the crime, which the prosecutor must prove beyond a reasonable doubt. In effect, the court not only has switched the burden of proof from the defendant to the prosecutor, but in the conversion increased the burden of proof from a "preponderance" to "beyond a reasonable doubt." Application of this higher burden of proof to the nebulous concepts of sanity and insanity will create an unnecessary and impossible evidentiary problem for the prosecution.

The General Assembly possesses the power to abolish this principle of common law, but that exercise of this power is not manifested by the express language of R. C. 2901.05. Further, this exercise of judicial legislation by the majority is not mandated by the requirements of the Due-Process Clause of the Fourteenth Amendment to the United States Constitution. *Patterson* v. *New York*, 45 U. S. L. W. 4708. I must, therefore, respectfully dissent from this court's decision in *State* v. *Meyer* and concur in the judgment only in *State* v. *Humphries*.

---

[2] *Comment, Affirmative Defenses in Ohio after Mullaney v. Wilbur*, 36 Ohio St. L. J. 828 (1975), proposes that the legislature's change of language in R. C. 2901.05(A) from the committee's proposal indicates the retention of requiring the defendant to prove an affirmative defense by a preponderance of the evidence.