THE STATE OF OHIO, APPELLEE, *v.* JOHNSON, APPELLANT.

[Cite as State v. Johnson (1978), 57 Ohio App. 2d 263.]

(No. 37253—Decided June 22, 1978.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. Floyd B. Oliver* and *Mr. Spiros E. Gonakis,* for appellant.

DAY, J. Defendant-Appellant Orlando Johnson (defendant) was indicted on one count of Aggravated Murder with specification, Ohio Revised Code (R. C.) 2903.01, and six counts of Attempted Murder, R. C. 2903.02 and 2923.02. The defendant plead Not Guilty and Not Guilty by Reason of Insanity. The trial began on October 27, 1976. The jury found defendant guilty of one count of Murder and six counts of Attempted Murder.

All of the convictions arise out of an incident on May 25, 1976, at the Bardons & Oliver Corporation, Cleveland, Ohio.

On May 24, 1976, defendant reported to his job at Bardons & Oliver at 7 a. m. At some point during the morning he opened a window "* * * to let some of the sound [out] * * *." Decedent John Zakarowsky, Frank Humbel, and a third person asked him to close it. The de-

fendant did not pay any attention to the request. When someone else closed the window, defendant opened a different window.

Andrew Javorsky, defendant's foreman, requested that defendant close the window, but defendant did not comply. Javorsky asked the defendant to come speak with him at his desk. When the defendant failed to do so, the foreman reported the incident to John Oliver, vice-president of manufacturing. After a discussion with Oliver, Jarvorsky approached the defendant and told him that he was fired. Defendant refused to listen and continued to work. Oliver then came out and explained to defendant that he was being discharged for failure to follow a reasonable order from his direct supervisor. According to Oliver, the defendant said that Oliver would hear from him again. Defendant denied making this remark.

Defendant changed from his work clothes and went home. After looking through the newspaper for a new job, he cut out two want ads. One was a machinist job at Ohio Camshaft Company and the other was a security guard position. Early the next morning—May 25, 1976—defendant went to Ohio Camshaft and applied for the machinist job. He then stopped at a bar and had between four and six beers.

Defendant returned to his home to pick up his gun before applying for the security guard position. He had held three previous jobs as a guard and considered the gun to be a tool of that profession. Therefore, he wanted to have it with him for the interview.

Defendant did not follow through with his plan to apply for the security job. Instead, he drove back to the Bardons & Oliver factory to pick up his tools. When defendant walked in he saw foreman Javorsky. The defendant felt that ordinarily when employees return for their tools, the foreman would look through the box to insure that company tools were not stolen. However, Javorsky did not approach the defendant and defendant concluded that the foreman was ignoring him. The defendant gave this account of the ensuing events:

"A. And [I] started to go to my locker in the back. I had some things in the back that I wanted, clothing and

tools, and, I think, maybe that is when I—the shooting started, I guess.

"Q. Why did the shooting start?

"A. I don't know why, you know. It just happened.

"Q. Did anybody say anything to you?

"A. Nobody said anything to me.

"Q. Did you say anything to anyone?

"A. No." (Bracketed material added.)

Defendant did not know how many shots he fired. When he stopped shooting, Zakarowsky was dead and five other persons were injured.[1]

Defendant left the building and got into his car. Two police officers approached the car and called out "Police". Defendant fired one shot into his own abdomen because "I [the defendant] just did not want to live. I just wanted to die."

The defense presented three expert witnesses on the issue of defendant's mental capacity at the time of the act as well as at the time of trial. Dr. Joseph Brozgal, clinical psychologist, testified that defendant was paranoid and "* * * on the verge of emotional disintegration * * *" when he examined him approximately one month before trial. Two psychiatrists testified on the question of defendant's mental status on May 25, 1976. Dr. Joseph Corrino's expert opinion was that defendant suffered from schizophrenia of psychotic proportions. Corrino testified further that at the time of the shooting defendant was not capable of making a judgment about right and wrong. Dr. Aaron Billowitz, however, testified that at the time of the acts defendant did not suffer from a mental disease severe enough to impair his ability to know right from wrong.

The defendant filed a timely appeal from his convictions and assigned four errors. Additional facts are set out under the relevant assignments of error.

I.

*Assignment of Error No. 1:*

[1]The sixth count of Attempted Murder presumably arises out of defendant's aborted attack on Oliver. The defendant pointed his gun directly at Oliver. Simultaneously, defendant fired and Oliver dropped to the floor to avoid injury. He emerged unharmed.

*"The trial court erred by failing to instruct the jury as to the effect of a verdict of not guilty by reason of insanity, thereby severely prejudicing the appellant and denying him a fair trial."*

At the close of all the evidence defendant requested that the jury be informed of the ramifications of a verdict of Not Guilty by Reason of Insanity. In particular, defendant wanted an instruction on the confinement provisions of R. C. 2945.39.[2] The trial court refused the request on the ground that punishment is determined solely by the trial court. I would find the refusal to be error.[3] The majority takes a contrary view.

The majority reasoning is this:

Under Ohio law, the jury's function is to determine guilt or innocence of the accused by resolving questions of fact and applying the law as given to them by the court. If the jury verdict is other than "not guilty," it is then the judge's duty to impose the appropriate punishment, R. C. 2945.11. When a defendant is found not guilty by reason of insanity, the judge's disposition must be in accordance with R. C. 2945.39.

This statute does not provide for "punishment" in the traditional sense. However, the confinement provisions are more closely related to the punishment issue than to the guilt determination. Informing the jury of the statutory confinement requirement would not aid the jury in determining factual guilt. Also, the statute governs the post-verdict stage which by definition is outside of the province of the jury. Accordingly, the provisions of R. C. 2945.39 are for the consideration of the judge and not the jury, see *Pope* v. *United States* (1962), 298 F. 2d 507, 508; *State* v. *Parks* (1963), 159 Me. 328, 335-336, 193 A. 2d 1, 5; see also *State* v. *Hood* (1963), 123 Vt. 273, 276-277, 187 A. 2d 499, 501.

While recognizing that there is a split of authority on this issue, the majority subscribes to the position that the trial court did not err in refusing to give the request-

---

[2]Defendant recited the wrong statutory section in the record, but it is clear from the context that defendant was referring to R. C. 2945.39.

[3]See my dissent with respect to Assignment of Error No. 1.

ed charge. Indeed, it might have been error had it been given, see *State* v. *Boham* (1971), 29 Ohio App. 2d 142, 151-152.

Assignment of Error No. 1 is not well taken.

## II.

*Assignment of Error No. 2:*

*"The trial court erred by instructing the jury that the appellant must prove his insanity by a preponderance of the evidence, thereby severely prejudicing the appellant and denying him of his 14th Amendment guarantee to due process of law."*

*Assignment of Error No. 3:*

*"The trial court erred by instructing the jury that the appellant must prove the affirmative defense of insanity by a preponderance of the evidence, thereby severely prejudicing the appellant and denying him a fair trial as guaranteed by Article 1 Section 10 of the Ohio Constitution."*

These assignments raise the same basic issue and will be treated together.

The defendant made a timely request that the jury not be instructed that defendant had the burden of proving his insanity by a preponderance of the evidence. The trial court refused and instead charged the jury that:

"In order to establish the defense of insanity, the *accused must establish by a preponderance of the evidence* that a disease or other defect of his mind had so impaired his reason that at the time of the criminal acts either he did not know that such an act was wrong or he did not have the ability to refrain from doing that act." (Emphasis added).

Defendant renewed his objection to this instruction before the jury retired.

The Ohio Supreme Court has recently addressed the issue of the correct standard of proof to be applied in a case in which defendant pleads not guilty by reason of insanity, *State* v. *Humphries* (1977), 51 Ohio St. 2d 95. The court concluded that the defense of insanity is an affirmative defense under R. C. 2901.05.[4] Therefore, the burden

---

[4] *"Sec. 2901.05 Burden and degree of proof.*

imposed on the defendant under the statute is that of "'* * * coming forward with evidence sufficient to raise any affirmative defense [such as insanity] * * *.'', State v. Humphries. supra, at 101 [quoting State v. Robinson (1976), 47 Ohio St. 2d 103, 109]. In order to meet that burden, the defendant '·* * * is not required to prove the mitigating circumstances of his affirmative defense by a preponderance of the evidence, 'but need only introduce evidence of such circumstances to raise a reasonable doubt of his guilt.' '' State v. Robinson, id.

This holding is applicable to the present case because the defendant's trial took place after January 1, 1974, the effective date of R. C. 2901.05, State v. Humphries, supra, at 95, 103. The defendant did come forward with evidence in the form of expert testimony that was sufficient to raise the insanity defense. Therefore, under the Humphries rule, the trial court erred in instructing the jury that defendant bore the burden of proving his insanity by a preponderance of the evidence. Defendant preserved the error. by objecting to the charge below and raising the issue on appeal. Accordingly, the charge was reversible error.

Assignments of Error Nos. 2 and 3 are well taken.

III.

*Assignment of Error No. 4:*

"*The trial court abused its discretion and violated the mandate of Ohio Revised Code 2929.41 in the sentencing of the appellant.*"

---

"(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof is upon the prosecution. The burden of going forward with the evidence of an affirmative defense is upon the accused.

"(B) As part of its charge to the jury in a criminal case, the court shall read the definitions of 'reasonable doubt' and 'proof beyond a reasonable doubt,' contained in division (D) of this section.

"(C) As used in this section, an 'affirmative defense' is either of the following:

"(1) A defense expressly designated as affirmative;

"(2) A defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence."

The lower court sentenced the defendant to these terms of imprisonment:

"Count 1 (Murder)—15 years to life

"Counts 2, 3, and 4 (Attempted Murder)—7 to 25 years on each count, to run consecutively with Count 1

"Counts 5, 6 and 7 (Attempted Murder)—7 to 25 years on each count, to run concurrently with Counts 2, 3, and 4"

The trial court may in its discretion determine that sentences shall be served consecutively rather than concurrently, R. C. 2929.41(B)(1).[5] The exercise of this discretion, however, is not entirely unfettered. Revised Code 2929.41(E)(1) supplies this limitation:

"(E) Consecutive terms of imprisonment imposed shall not exceed:

"(1) An aggregate minimum term of twenty years, when the consecutive terms imposed include a term of imprisonment for murder;"

In the instant case defendant was sentenced to an aggregate minimum term of 36 years.[6] This clearly exceeds the statutory limits imposed by R. C. 2929.41(E)(1).

Assignment of Error No. 4 is well taken.

Because this case must be reversed and remanded for a new trial the whole sentencing judgment is reversed. This renders unnecessary a reduction of the sentence to comport with the statutory requirements. However, that would be the course imposed upon us were the judgment otherwise free from fault. We note the necessity of statutory conformance in the event there ever comes a time for sentencing after re-trial in this case.

---

[5]"Sec. 2929.41 Multiple sentences.

"* * *

"(B) A sentence of imprisonment shall be served consecutively to any other sentence of imprisonment, in the following cases:

"(1) When the trial court specifies that it is to be served consecutively;"

[6]This consists of 15 years minimum on Count 1, 7 years minimum on Count 2, 7 years minimum on Count 3, and 7 years minimum on Count 4.

Reversed and remanded for further proceedings according to law.

*Judgment reversed.*

KRUPANSKY and SILBERT, JJ., concur.

DAY, J., concurs in part and dissents in part.

SILBERT, J., retired, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.

DAY, J., concurring in part and dissenting in part:

I concur in the judgment but respectfully dissent from the majority disposition of the first assignment of error.

In my view, the trial judge's discretion should control the giving or refusal of an instruction on the dispositional effects of a verdict of not guilty by reason of insanity *unless* the defendant or the jury specifically requests such a charge. In the latter event, a charge should be given, see *People* v. *Cole* (S. Ct. Mich., 1969), 172 N. W. 2d 354, 364-366; *Schade* v. *State* (S. Ct. Alaska, 1973), 512 P. 2d 907, 917-918. The charge should explain in simple terms that the verdict does not mean release, but instead requires that the defendant receive medical treatment until he no longer poses a threat to society.

Such an instruction does not invade the province of the sentencing court. Rather it explains a phase of treatment which serves to clarify the consequences of a verdict of not guilty by reason of insanity. The failure to explain may well invite the jury to engage in undesirable speculation as to the consequences of a successful insanity defense, *Commonwealth* v. *Mutina* (1975), 323 N. E. 2d 294, 300-301. An instruction will prevent this and will also dispel any anxiety for public safety resulting from the popular or juror misconception that the verdict automatically frees the ailing defendant, *Commonwealth* v. *Mutina, id.*

I would hold that where a defendant presents sufficient evidence to raise the insanity defense and the defendant requests a charge on the consequences of a verdict of not guilty by reason of insanity, that it is reversible error for the trial court to deny the request. Absent request, I would place the decision to charge or not within the discretion of the trial court.