OPINION
Defendant-appellant Artemus Driver appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of rape in violation of R.C. 2907.02, one count felonious assault, in violation of R.C. 2903.11 and one count of kidnaping, in violation of R.C. 2905.01.
 STATEMENT OF THE FACTS AND CASE
An indictment was filed charging appellant with one count of rape, a first degree felony in violation of R.C. 2907.02, one count of felonious assault, a second degree felony in violation of R.C. 2903.11 and one count of kidnaping, a first degree felony in violation of R.C. 2905.01. At the arraignment, appellant entered a plea of not guilty. A trial commenced on August 10, 1999. The following facts were elicited at trial: In April, 1999, appellant and the victim, Christy Thompson [hereinafter victim], were living together in Massillon, Ohio. On the evening of April 19th, the couple had an argument after appellant made a remark that if he had been the person who stabbed the victim's friend during a recent robbery at Burger King, he would have made sure she was dead. After appellant made that statement, the victim told appellant to shut up and went into their bedroom. Appellant followed the victim into the bedroom. He pulled the victim off the bed and scratched her face and chest with his fingernails. When the victim told appellant to leave, he left for over an hour but returned intoxicated and angry. At the time of his return, the victim was sitting in their living room. Appellant began pushing the victim around the room, taunting her to fight him. Although the victim told appellant that she did not want to fight, appellant insisted that she do so. He continued to push and grab the victim as she begged appellant to stop. Eventually, appellant took a knife which was located on the entertainment center in the living room and jabbed it over the victim's head. The victim grabbed appellant's arm to stop him, and in so doing, cut her hand on the knife. Appellant continued to threaten the victim with the knife. At that point, someone knocked on the door. Appellant answered the door, while the victim stayed in the background. As appellant spoke to the person at the door, the victim saw an opportunity to escape and managed to climb out their bedroom window. However, appellant caught the victim outside. Appellant continued pushing the victim and threatening her with the knife as the victim pleaded with appellant to stop. At one point, the victim managed to wrestle the knife away from appellant, broke it in half and threw it on the ground. Thereafter, appellant attempted to physically carry the victim back into the house. The two struggled because the victim did not want to go back into the house for fear of what appellant would do to her once they were inside the house and out of public view. To avoid appellant's attempt to take her into the house, the victim threw herself on the ground. However, appellant attempted to drag her into the residence. At one point, appellant pushed the victim against the car and proceeded to bang her head against it. Eventually appellant picked the victim up and carried her back into the residence. Once inside the residence, appellant told the victim to take her clothes off because she was wet and muddy from the struggle outside. The victim complied. However, appellant began to push and grab the victim again. Appellant started punching the victim repeatedly in her face, causing her to bleed profusely. Appellant told the victim that he was going to finish her off. At that point, appellant went into the kitchen and returned with another knife. The victim was instructed by the appellant to lay down on the couch and to cover her head with a blanket. The victim refused to cover her face for fear of what appellant was going to do to her. At this point, the victim pleaded with appellant that she loved him and to stop. However, appellant continued to order the victim to cover her face. Eventually, appellant instructed the victim to get into the bath tub. Again, she complied. Initially, appellant began gently wiping the victim's face with the washcloth and stated that he could not believe what he had done to her. At times, appellant seemed calm and remorseful about what he had done. However, appellant would become angry again and begin to wipe the face of the victim forcefully. Eventually, appellant left the bathroom, leaving the victim standing naked in the tub. By this point, the victim did not know where appellant went or what she should do. Appellant returned to the bathroom eventually. He held a knife over the victim's head as though he was mustering up the nerve to stab the victim. Instead, however, appellant left the bathroom. Appellant returned to the bathroom several times repeating his threats with the knife. Eventually, the victim tried to convince appellant to go to bed with her so that the ordeal would end. Appellant finally agreed and told the victim to make a bed on the floor. While the victim made the bed, appellant went into the bedroom and brought the victim some clothes. Appellant then instructed the victim to clean up the living room, which she did. Appellant then ordered the victim to lay down on the floor while appellant sat behind her on the couch. The victim laid on the floor as instructed but kept looking at appellant begging him to put down the knife. Appellant continued to tell the victim to turn back around and watch television. However the victim did not want to do this, because she was terrified of what appellant was going to do to her if her back was turned. Therefore, the victim begged appellant to come onto the floor and go to sleep with her. However, appellant continued to sit on the couch, with a knife in his hand, for quite some time, insisting that the victim turn around and watch the television. Eventually, appellant laid down on the floor next to the victim. At times, appellant would look at the victim and shake his head as though he could not believe what he had done to her. However, then appellant would get mad again. Eventually, the victim convinced the appellant to lay the knife down on the coffee table beside where they were sleeping. However, the two began to talk and the subject as to whether the victim had been unfaithful to appellant arose. Appellant accused the victim of having oral sex with another man. Although the victim denied such behavior, appellant became angry again and picked up the knife and demanded that the victim perform oral sex on him. The victim initially complied with his demand, but stopped because her facial injuries were so painful. Appellant told the victim not to stop or he would stab her with the knife. The knife remained in appellant's hand. Appellant also told the victim that if he felt the victim's teeth or if she bled on him he was going to stab her. Eventually, appellant fell asleep for a short time. When he awoke it was the morning of April 20th. Throughout the next day, several people stopped by the home. However, appellant made the victim go into the bedroom and ordered her to cover her head until the visitors left. While the victim was in the bedroom, appellant came in several times throughout the day and would shake his head when he looked at her injuries. Appellant again told the victim that he should have finished her off. At approximately 7:00 P.M., on April 20th, appellant's cousin came to the residence and asked appellant to play basketball with him. The victim convinced appellant she was not going to leave the residence and that she would not go to the police. Thereafter, appellant left the residence to play basketball. The victim then went to the back bedroom and climbed out the window and ran to a friend's house. Eventually, the victim's friend convinced her to call the police. The police and paramedics arrived. The police took photographs of the victim's injuries and she was transported to the hospital for treatment. The evidence shows that the victim suffered prolonged pain and disfigurement from the beating. The victim also has permanent scarring on her eyelid from the ordeal. The police recovered the two knives appellant used against the victim and submitted them to the crime lab for analysis. One of the knives tested positive for the presence of human blood. Appellant did not testify or present any evidence in his defense, other than the cross examination of the State's witnesses. On August 11, 1999, a jury found the appellant guilty. On August 19, 1999, appellant was sentenced to serve a ten year sentence on the rape charge, a six year sentence on the felonious assault charge and a six year sentence on the kidnaping charge. It was ordered that the ten year sentence for rape and the six year sentence for felonious assault be run consecutively to each other and that the six years incarceration for the offense of kidnaping be run concurrently to the rape and felonious assault sentences, for a total of 16 years of incarceration. It is from this August 19, 1999, conviction and sentence that appellant prosecutes this appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTOR TO ARGUE AND PRESENT EVIDENCE REGARDING APPELLANT'S PRIOR BAD ACTS.
ASSIGNMENT OF ERROR II
 THE TRIAL COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY OF [SIC] THE DEFENSE OF INTOXICATION.
ASSIGNMENT OF ERROR III
 APPELLANT WAS PREJUDICIALLY DEPRIVED OF HIS UNITED STATES AND OHIO CONSTITUTIONAL RIGHTS TO A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL.
ASSIGNMENT OF ERROR IV
 THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION, AND THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
ASSIGNMENT OF ERROR V
 THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO CONSECUTIVE COUNTS OF INCARCERATION, IN VIOLATION OF O.R.C. 2941.25.
ASSIGNMENT OF ERROR VI
 OTHER ERRORS WERE COMMITTED AT TRIAL NOT RAISED HEREIN BUT APPARENT ON THE RECORD.
 I
Appellant argues that the trial court erred when it allowed evidence and argument regarding prior bad acts committed by appellant. Specifically, appellant challenges testimony that appellant made a statement to the victim that if he had been the person who stabbed the victim's friend during the robbery at Burger King, he would have killed the manager, rather than leaving her alive. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. Absent an abuse of discretion, a trial court's evidentiary ruling will not be disturbed on appeal. An abuse of discretion connotes more than an error of law or judgment. It implies the trial court's ruling was arbitrary, unreasonable or unconscionable. State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 31. The challenged evidence was presented as follows: Q. Okay. Did the two of you start arguing? A. Well, he was saying some things that I didn't want to hear and I told him to be quiet and went back in my bedroom or, I don't know, I might have told him to shut up. Q. What was he talking about? A. About, um, what happened at Burger King with my friend. And we just had a different opinion about what happened. Q. All right. You have to be, I'm sorry, specific with this jury of what you're talking about. Okay. What was, what was he talking about the Burger King incident? What's this? MR. BEANE: Your Honor, I'd like to object. If the Court would like, like approach the bench. THE COURT: What was that now? MR. BEANE: I object, Your Honor. And could we approach the bench before she gets into this area? THE COURT: Yes, certainly. (A conference was held at the bench outside the hearing of the jury.) MR. BEANE: Your Honor, I think this is getting into an area about a crime that was committed, the robbery and the assault of the girl that worked at Burger King, who was a friend of Christy. I feel that that would be prejudicial to the defense. That case is pending before another Court, not with this defendant, but another defendant. I think his name is Robinson. The girl was robbed, she was stabbed and she was left for dead and, ah, I feel that the jury should not hear that testimony. MS. DAVE: Ah, Your Honor, a couple things in response. First of all — THE COURT: I can't hear. MS. DAVE: First of all, Your Honor, it goes to the defendant's motive. Defense counsel has argued, made statements in opening that this is in regard to a jealous argument between boyfriends and girl friends, but that, in fact, is not what the evidence is going to show. There is going to be testimony about this girl and a friend of hers, that a stabbing took place, and it goes to his motive and the consistency of what he did to her. THE COURT: Okay. Pose your question. (End of side bar conference.) BY MS. DAVE: Q. What was Artemus saying about this incident at Burger King? A. He said that, um, Darris was just trying to live and that if he had been the one that had did it, that he would have made sure that Sabrina was dead. Q. Is Sabrina your friend? A. Yes. Q. Okay. And was, did you know Darris as well? A. Yes. Q. Okay. When he made that statement to you, what did you say? A. That's when I told him to shut up. Q. Okay. A. And I went in my bedroom. Q. After you went to the bedroom, what happened? A. He came in there. And I was laying on the bed and he just like snatched me up off, like pulled me and he had scratched his fingers, nails across my face and down my like chest. And I just kept saying, Leave, just leave. So he left. He left for a long time." Evid.R. 404(B) of the Ohio Rules of Evidence provides as follows: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
This Rule of Evidence is codified in Section 2945.59 of the Ohio Revised Code, which provides: In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant. First, we find that the testimony was presented as part of the res gestae of the crimes committed against the victim. This testimony was evidence of what actually happened prior to the assault, rape and kidnaping. See State v. Cross (Sept. 30, 1999), Stark App. No. 1998CA00238, unreported, 1999 WL 976453; State v. Blackmon (July 29, 1996), Stark App. No. 95CA00311, unreported, 1996 WL 488821. This testimony pertained to the initial argument which led to the assault, rape and kidnaping. Further, while we recognize R.C. 2945.59 is to be strictly construed against the State, and to be conservatively applied by the trial court, this testimony was relevant to show appellant's intent to harm or terrorize the victim when he repeatedly threatened appellant with the knife. Appellant's statements that he would have made sure Sabrina was dead when Sabrina was stabbed during the robbery demonstrates appellant's state of mind at the time of the acts committed against the victim. Appellant's statements were relevant to show motive and intent and were admissible in response to appellant's counsel's claim that the acts committed were boyfriend — girlfriend jealousy-related acts. We find no violation of Evid.R. 404(B). Appellant also argues that even if this evidence is admissible under Evid.R. 404(B) and R.C. 2945.59, it is nonetheless inadmissible under Evid.R. 401 and/or Evid.R. 403. Appellant suggests that the testimony needlessly confused and inflamed the jury regarding the real issue, ultimately misleading the jury to convict based upon appellant's past conduct rather than on the facts of the pending charge. Evid.R. 401 defines "`relevant evidence' as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 403 identifies when the exclusion of relevant evidence is mandatory as opposed to when the exclusion of relevant evidence is discretionary. This rule provides: (A) Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
(B) Exclusion Discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.
Evid.R. 403. We find the trial court properly determined the evidence was relevant. As part of the res gestae of the crimes and incident, we find that the testimony was highly relevant. The argument explained and formed the basis of how this incident began and appellant's motive in wielding the knife as he did. Further, we find that its probative value was not substantially outweighed by those considerations contained in Evid.R. 403(A) and (B). In addition, even if it was error to admit this evidence, we find it to be harmless error in light of the other evidence produced at trial. The trial court did not abuse its discretion when it permitted the state to introduce the evidence. Assignment of error I is overruled.
 II
In the second assignment of error, appellant contends that the trial court erred when it failed to sua sponte instruct the jury on the defense of intoxication. We disagree. Voluntary intoxication may, under extreme circumstances, negate one's specific intent. State v. Fox (1981),68 Ohio St.2d 53, 55, 428 N.E.2d 410. However, only where the defendant was "so intoxicated as to be mentally unable to intend anything" does intoxication create a reasonable doubt as to the defendant's ability to form the specific intent essential to the charged felony. State v. Jackson (1972), 32 Ohio St.2d 203, 206, 291 N.E.2d 432, 433, superceded by statute on other grounds, see State v. Humphries (1977),51 Ohio St.2d 95, 364 N.E.2d 1354. Intoxication can co-exist with the ability to form an intention or act purposely. State v. Hicks (1989),43 Ohio St.3d 72, 538 N.E.2d 1030. Generally, it is within the trial court's discretion as to whether to instruct a jury on intoxication as a defense. State v. Hill (1995), 73 Ohio St.3d 433, 443, 653 N.E.2d 271. In Hill, the Ohio Supreme Court reiterated that it will not impose a requirement for a trial judge to instruct a jury on intoxication since "[i]ntoxication is easily simulated" and "often voluntarily induced for the sole purpose of nerving a wicked heart[.]" Hill, 73 Ohio St.3d at 443
(citing Nichols v. State (1858), 8 Ohio St. 435, paragraph two of the syllabus). Appellant's trial counsel failed to request a jury instruction on the defense of intoxication. Therefore, all but plain error is waived. Crim.R. 30(A); Crim.R. 52; State v. Williford (1990),49 Ohio St.3d 247, 252, 551 N.E.2d 1279. In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus; State v. D'Ambrosio (1993),67 Ohio St.3d 185, 191. The trial court did not commit plain error by failing to sua sponte instruct the jury on the defense of intoxication because the evidence did not support this instruction. Evidence of intoxication is sufficient to raise the intoxication defense only where, if believed, it would support acquittal. While there is evidence that appellant had been drinking and was intoxicated, there is no evidence that intoxication affected appellant's ability to form an intention. The incidents which led to the charges against appellant occurred over an extensive period of time. Appellant took steps to conceal the victim's injuries from others, would not let appellant leave the home, repeatedly acted as though he was going to stab appellant and coherently instructed the victim to do specific things through out the ordeal. Appellant's actions indicate that appellant was in control of his faculties and in control of the victim. In addition, appellant showed remorse, consciousness of guilt and fear of detection. The evidence shows appellant was capable of forming the necessary intent to commit the offenses charged. Thus, the evidence of the acts which occurred during the ordeal as well as the length of the ordeal negate any claim that "but for the error" the outcome of the trial would have been otherwise. We do not find error, plain or otherwise. Appellant's second assignment of error is overruled.
 III
In the third assignment of error, appellant contends that appellant's trial counsel was ineffective when he failed to request an instruction on intoxication. We disagree. The standard of review for a claim of ineffective counsel was established in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 and adopted by Ohio in State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases set forth a two-pronged analysis. The first prong of the analysis requires a showing that counsel's assistance was ineffective in that it fell below an objective standard of reasonable representation and violated essential duties to the client. The second prong requires a showing of actual prejudice by counsel's ineffectiveness such that but for the counsel's unprofessional error the outcome of the trial would have been different. A court may dispose of a case by considering the second prong first, if that would facilitate disposal of the case. Bradley, 42 Ohio St.3d at 143
(citing Strickland, 466 U.S. at 697.) As discussed previously, the evidence shows that appellant was not intoxicated to the point at which he could not form the specific intent to commit the crimes for which he was charged. Therefore, appellant could not claim the defense of intoxication and was not entitled to an instruction on the defense. Therefore, trial counsel was not ineffective for failing to request such an instruction. Further, based upon the evidence before the trial court, we find the outcome of trial would not have been different, even if the instruction had been given. Appellant's third assignment of error is overruled.
 IV
In the fourth assignment of error, appellant contends that the convictions for rape, kidnaping and felonious assault, in violation of R.C. 2907.02, R.C. 2905.01 and R.C. 2903.11, respectively, were against both the sufficiency of the evidence and the manifest weight of the evidence. In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541 (citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717). Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1. Appellant contends that the convictions were based solely upon the testimony of the victim and that the victim's testimony was not legally sufficient to prove the elements of the charges. It is argued that the victim performed the sex voluntarily and not out of fear and that the victim admitted that the knife play and subsequent injury were of her own doing. We find appellant's argument to be without merit. R.C. 2905.01 defines kidnaping as follows: (A) No person, by force, threat, or deception, . . . shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: . . .
(2) To facilitate the commission of any felony or flight thereafter; (3) To terrorize, or to inflict serious physical harm on the victim or another; [and/or] (4) To engage in sexual activity, as defined in section2907.01 of the Revised Code, with the victim against the victim's will. . . . Rape is defined, in pertinent part, as follows:
No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
The elements of felonious assault are, in pertinent part:
(A) No person shall knowingly: . . . (2) Cause or attempt to cause physical harm to another . . . by means of a deadly weapon . . . [to wit: a knife], as defined in section 2923.11 of the Revised Code.
We find, as a matter of law, that appellant's convictions were based on sufficient evidence and were not against the manifest weight of the evidence. Appellant threatened appellant with two different knifes and cut appellant in the hand and arm. The victim was struck and kicked about the head, face and body repeatedly by appellant, requiring the victim to be taken to the hospital for treatment. We find there was sufficient, competent evidence of felonious assault. After severely beating the victim and cutting her with a knife, Appellant again grabbed a knife and ordered the victim to perform fellatio on appellant. The victim complied but did so because "he told me to and he, he was getting mad again and I didn't want him to get all worked up again, so I just did what he told me to do." Transcript of Proceedings, Vol. 2, page 68. While the victim was forced to perform fellatio, appellant kept the knife in his hand, threatening the victim not to stop or bite him because if she did, he would stab her. This evidence is sufficient to support a rape conviction. This ordeal lasted from the evening of April 19, 1999, to approximately 7:00 P.M., April 20, 1999. After appellant began the assaults, the victim attempted to get away. However, appellant caught up to her outside the home. Appellant beat her again and dragged her back into their home. The victim was then ordered to do various things, including an order to perform fellatio, and orders to go to particular rooms of the home, as compelled by appellant. When others came to the home, the victim was ordered to go into the bedroom and cover her head. While the visitors remained in the home, appellant would occasionally come into the bedroom to check on the victim. The ordeal continued until appellant left the home to play basketball on the evening of April 20, 1999. That provided the victim with the opportunity to escape undetected out a window. Such evidence is sufficient to support a kidnaping conviction. The facts recited by this court are illustrative of the ordeal the victim was forced to endure at the hands of appellant. Upon review of the entire record and our Statement of Facts, as set forth supra, we find the jury did not lose its way so as to result in a miscarriage of justice. We find the jury's decisions are not against the manifest weight of the evidence and that the convictions are supported by sufficient competent, credible evidence. Appellant's fourth assignment of error is overruled.
 V
Appellant contends that the three convictions are allied offenses of similar import, in violation of R.C. 2941.25. Appellant submits that the same specific conduct formed the basis for all three charges and subsequent convictions and, therefore, the sentences must be merged into one. We disagree. Appellant cites this court to R.C. 2941.25(A). R.C.2941.25 states: (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them. Recently, the Ohio Supreme Court has clarified the test to be applied when reviewing claims involving allied offenses of similar import. Under the analysis of State v. Rance (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, a reviewing court is to compare the elements of the offenses in the abstract. If the elements correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. Id. at 638-639 (citing State v. Jones (1997), 78 Ohio St.3d 12, 14, 676 N.E.2d 80). The issue is whether "the elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other.'" If the elements do not so correspond, the crimes are not allied offenses of similar import. Appellant's trial counsel raised the issue of allied offenses of similar import before the trial court by moving that the kidnaping charge be merged with the rape charge. The trial court denied that motion. We find that the trial court did not err. As charged in the indictment, rape, pursuant to R.C. 2907.02, required proof that appellant engaged in sexual conduct with the victim having purposely compelled the victim to submit by force or threat of force. Kidnaping, under R.C.2905.01, required proof that appellant did, by force, threat or deception, remove the victim from the place where she was found or did restrain the victim from her liberty, with purpose to facilitate the commission of a felony or flight thereafter, and/or terrorize or inflict serious physical harm on the victim and/or engage in sexual activity, as defined by R.C. 2907.01, with the victim against her will. By comparing the elements of kidnaping to the elements of rape, one can see that the crime of kidnaping can be committed without committing the offense of rape, and vice versa. Each contains at least one element not contained in the other. Therefore, we find that the offenses are not allied offenses. Appellant also alleges that the trial court erred when it failed to merge the felonious assault charge with the charges of kidnaping or rape. Appellant's trial counsel did not move the trial court to merge the felonious assault charge with either of the other two charges. Errors not raised below when they may readily be corrected are ordinarily waived. However, they may be reviewed by an appellate court under the plain error doctrine as set forth under Cim. R. 52(B). Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. In regards to the charge of felonious assault, the State was required to prove that appellant knowingly caused serious physical harm to the victim and/or caused or attempt to cause physical harm to the victim by means of a deadly weapon, to wit: a knife. R.C. 2905.01. By comparing the elements of felonious assault to the elements of rape and kidnaping addressed above, we find that the offenses are not allied offenses. Therefore, we find no error, plain or otherwise. Appellant's fifth assignment of error is overruled.
 VI
In his final assignment of error, appellant maintains there are errors which are apparent on the record but not raised in his brief. We disagree. Appellant cites to the case of Anders v. California (1966),386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493. In Anders, appointed counsel found his indigent client's case to be wholly frivolous and without merit. The United States Supreme Court held it was error for counsel to advise the appellate court by letter without filing any motion or brief on behalf of his client. The matter currently before the court is distinguishable from Anders in that appellant's appellate counsel filed a brief and in fact assigned seven other errors for review. An Anders' claim under this assignment of error has no merit. However, a review of the record does not reveal any error which would warrant a reversal of appellant's conviction or sentence.
Appellant's eighth assignment of error is overruled. The Judgment of the Stark County Court of Common Pleas is affirmed.
By Edwards, J. Farmer, P.J. and Wise, J. concurs