THE STATE OF OHIO, APPELLANT, *v.* CURRY, APPELLEE.

[Cite as State *v.* Curry (1989), 45 Ohio St. 3d 109.]

(No. 88-1290—Submitted May 17, 1989—Decided August 23, 1989.)

*Joseph R. Kiacz,* for appellant.
*Newcomer, Shaffer, Geesey & Hutton* and *John S. Shaffer,* for appellee.

WRIGHT, J. The state raises two questions for review: first, whether insanity is a defense to negligent vehicular homicide, and second, if insanity is a defense, whether Curry has established the defense by a preponderance of the evidence. We answer the first question in the affirmative and the second question in the negative. Accordingly, the judgment of the court of appeals is reversed, and the decision of the trial court is reinstated.

## I

Appellee was charged with a violation of R.C. 2903.07(A), which provides in pertinent part: "No person, while operating * * * a motor vehicle, * * * shall negligently cause the death of another."

"Negligence" for purposes of the criminal code is defined in R.C. 2901.22(D):

"A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk

that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist."

In its first proposition of law, the state argues that "[i]nsanity is not a defense to the crime of negligent vehicular homicide." In the state's view, insanity is only a defense to a criminal charge where it negates the intent element of the offense. Accordingly, the state argues, since negligent vehicular homicide is not a crime requiring an intent to kill, insanity is not available as a defense. We believe this argument misperceives the fundamental bases of the insanity defense.

In *State* v. *Staten* (1969), 18 Ohio St. 2d 13, 47 O.O. 2d 82, 247 N.E. 2d 293, this court reviewed at length the history of the insanity defense in Ohio. We noted that "[i]n determining what unsoundness of mind may excuse an accused from criminal responsibility for his acts, this court has almost always * * * been more liberal to those accused of crime than were the judges who promulgated the so-called M'Naghten rule." *Id.* at 15, 47 O.O. 2d at 83, 247 N.E. 2d at 295. While the *M'Naghten* rule focuses strictly on the cognitive ability of the defendant to distinguish right from wrong, see *M'Naghten's Case* (1843), 8 Eng. Rep. 718, the insanity defense adopted in Ohio also considers the defendant's volition or "free agency" such that he will have no criminal responsibility for an act if he was unable to refrain from doing that act. *Staten, supra,* at 17, 47 O.O. 2d at 84, 247 N.E. 2d at 296. Accordingly, we held at paragraph one of the syllabus: "One accused of criminal conduct is not responsible for such criminal conduct if, at the time of such conduct, as a result of mental disease

or defect, he does not have the capacity either to know the wrongfulness of his conduct or to conform his conduct to the requirements of law. * * *" (Citations omitted.)

In arguing that the insanity defense is limited to offenses of which intent is an element, the state appears to confuse the insanity defense with the defense of "diminished capacity," under which an accused is permitted to introduce evidence of a mental disease or defect to prove that he did not have the particular state of mind that is an element of the offense charged. This court, however, expressly rejected the diminished capacity defense in *State* v. *Wilcox* (1982), 70 Ohio St. 2d 182, 24 O.O. 3d 284, 436 N.E. 2d 523. Thus, it is clear from our decision in *Wilcox* that in Ohio the insanity defense operates independently of the mental element of an offense. See *Mullaney* v. *Wilbur* (1975), 421 U.S. 684, 706 (Rehnquist, J., concurring) (noting that "the existence or nonexistence of legal insanity bears no necessary relationship to the existence or nonexistence of the required mental elements of the crime").

This conclusion also follows from the fact that under Ohio law, a plea of not guilty by reason of insanity is an affirmative defense. *State* v. *Humphries* (1977), 51 Ohio St. 2d 95, 5 O.O. 3d 89, 364 N.E. 2d 1354, paragraph one of the syllabus. In *State* v. *Poole* (1973), 33 Ohio St. 2d 18, 19, 62 O.O. 2d 340, 294 N.E. 2d 888, 889, this court described the nature of affirmative defenses as follows: "[T]hey represent not a mere denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged, but, rather, they represent a substantive or independent matter 'which the defendant claims exempts him from liability even if it is conceded that the facts claimed by the

prosecution are true.' " In other words, "the applicability of a defense becomes an issue only after all the elements of a crime have been satisfied. If an element is missing, the defendant is simply not guilty, and there is no need to resort to a defense. * * *" Mickenberg, A Pleasant Surprise: The Guilty but Mentally Ill Verdict Has Both Succeeded in Its Own Right and Successfully Preserved the Traditional Role of the Insanity Defense (1987), 55 U. Cin. L. Rev. 943, 952. Since, for example, the diminished capacity defense goes directly to the mental element of an offense, successful use of that defense would negate that element and the accused would be entitled to acquittal of the crime charged (though he may be guilty of a lesser degree offense). Conversely, where the state has proved every element of the crime beyond a reasonable doubt, including the mental element, the accused may present evidence that he was insane at the time of the offense and thus should not be held criminally responsible. Rather than leading to a simple judgment of acquittal, however, successful use of the insanity defense results in a judgment of not guilty by reason of insanity, followed by committal proceedings pursuant to R.C. 2945.40.

Thus, the insanity defense is and always has been broader in scope than the posture argued by the state. While it is true that a legally insane defendant may lack the capacity to form the specific intent to commit a particular crime, criminal intent or lack thereof is not the focus of the insanity question. Rather, the insanity defense goes to the very root of our criminal justice system and is founded on the broader principle that an insane person may not be held criminally responsible for his conduct. See *Kuhn* v. *Zabotsky* (1967), 9 Ohio St. 2d 129, 134, 38 O.O. 2d 302, 305, 224 N.E. 2d 137, 141. As explained in *Staten, supra,* "one, who does not know that his action is wrong or does not have the capacity to avoid such action, is not a proper subject for punishment. * * * To punish such an individual would be like inflicting punishment upon an inanimate object, such as a machine, because it had, without any intelligent human intervention, caused some damage." *Id.* at 20, 47 O.O. 2d at 86, 247 N.E. 2d at 298. Thus, insanity may be a defense to any crime regardless of whether the particular offense requires that the defendant's conduct be purposeful, knowing, reckless, or negligent. Accordingly, we hold specifically that insanity is a defense to negligent vehicular homicide. Accord *Minneapolis* v. *Altimus* (1976), 306 Minn. 462, 238 N.W. 2d 851, paragraph two of the syllabus (temporary insanity due to involuntary intoxication is a defense to traffic offenses requiring proof of a general criminal intent or negligence).

II

In its second proposition the state argues that the evidence is insufficient to establish Curry's insanity defense. The test of insanity is set forth in *Staten, supra,* at paragraph two of the syllabus:

"In order to establish the defense of insanity where raised by plea in a criminal proceeding, the accused must establish by a preponderance of the evidence that disease or other defect of his mind had so impaired his reason that, at the time of the criminal act with which he is charged, either he did not know that such act was wrong or he did not have the ability to refrain from doing that act."[1]

---

[1] In *Staten, supra,* at paragraph two of the syllabus, this court reaffirmed the common-law rule that the burden of proof on the insanity defense rests upon the ac-

Over the state's continuing objection, several witnesses testified concerning the defendant's emotional condition during the days preceding the accident. This testimony, along with the defendant's testimony, reveals that the defendant and her husband experienced marital problems arising from his involvement with another woman. The couple was separated for two and one-half months, during which time the defendant became increasingly involved in her religion. She spent a considerable amount of time reading the Bible and interpreting the Scriptures.

Much of the testimony focused on the sequence of events occurring between Friday, May 30, 1986 and the morning of Tuesday, June 3, 1986, the morning of the accident. All the witnesses testified that the defendant was emotionally distraught during this period. They also agreed that the defendant had gotten little, if any, sleep during this period.

As to the defendant's mental condition during the days before the accident, the defendant's sister testified that the defendant at times was in "a real deep stare." The defendant's mother testified that when she visited the defendant on the day before the accident the defendant "* * * was staring at the Bible, just staring she wasn't reading, she was just staring." A deacon who had met with the defendant that evening testified that she was "just too much in a daze." Finally, the babysitter with whom the defendant had stayed the night before the accident stated that they had prayed and discussed the Scriptures but that "in the state she [the defendant] was at, you know, I don't think she was comprehending what I was telling her."

The state argues that Curry's mental condition as described above is attributable primarily to the fact that she had gotten little sleep during this period. Three of the witnesses quoted above testified that Curry appeared to be very tired and in need of sleep. The defendant's sister admitted that she did not know the symptoms of a person who is deprived of sleep.

The defendant testified that she was extremely upset during this period as a result of the separation from her husband and the fact that, while a reconciliation was attempted, her husband was forcing her to choose between him and her religion. She further testified that she had gone without sleep from Friday, May 30 until

---

cused by a preponderance of the evidence. See *Kelch* v. *State* (1896), 55 Ohio St. 146, 45 N.E. 6, paragraph one of the syllabus; *Bergin* v. *State* (1876), 31 Ohio St. 111, paragraph three of the syllabus. Subsequent to our decision in *Staten,* the General Assembly enacted R.C. 2901.05(A), which when enacted provided that "* * * the burden of going forward with the evidence of an affirmative defense is upon the accused." (134 Ohio Laws, Part II, 1866, 1893.) In *Humphries, supra,* we held that insanity is an affirmative defense under R.C. 2901.05(A) and thus that a defendant who pleads insanity "has only the burden of going forward with evidence of a nature and quality sufficient to raise that defense, and does not have the burden of establishing such defense by a preponderance of the evidence." *Id.* at paragraphs one and two of the syllabus. R.C. 2901.05(A), however, was amended in 1978 (137 Ohio Laws, Part II, 3895, 3896), and now provides in pertinent part: "* * * The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused." Thus, it is now settled in Ohio that the plea of not guilty by reason of insanity is an affirmative defense which must be proved by a preponderance of the evidence. See *State* v. *Brown* (1983), 5 Ohio St. 3d 133, 134, 5 OBR 266, 267, 449 N.E. 2d 449, 450.

Tuesday, June 3. As to the particular circumstances of the accident, Curry recalled that she left the babysitter's residence and was intending to drive home but did not. Apparently, Curry drove past the turn-off to her home and continued driving on through West Unity. When asked where she was going, Curry testified:

"In my mind, at that time, I thought I was going to heaven. And, that's all I could think about, I thought well, if I go this way — this way is home and that way would be heaven and so I followed the sun and to me at that time it was the Son of God and if I followed, I'd go. So, I kept going."

The defense also offered the deposition of Dr. Thomas G. Sherman, a forensic psychiatrist who had examined the defendant on two occasions beginning approximately three months after the accident.[2] Dr. Sherman stated "to a reasonable degree of psychiatric certainty" that the defendant at the time of the accident suffered from "schizophreniform disorder," or a "profound disorganization of thought." Dr. Sherman stated that, in his opinion, the defendant's mental disease on the date of the accident rendered her incapable of appreciating the criminality of the act with which she was charged, and that "had the mental illness not been present, an act such as the auto accident in its current form would have never occurred." The state objected to these statements of opinion. On cross-examination, Dr. Sherman further explained that when he examined the defendant in August 1986 her mental illness was "in remission," and that he had never seen her in a state of psychosis.

Having fully set forth the evidence relevant to Curry's insanity defense, we must consider whether that defense was proven by a preponderance of the evidence. Although the statement of the trial court is somewhat unclear, the judge did state that "I do give considerable weight to the testimony of Doctor Sherman." Since Dr. Sherman's testimony was relevant solely to Curry's insanity defense, it can scarcely be doubted that the trial court considered the defense and found that it had not been established.

The trial judge also stated that "I find that the defendant's mental state at that time was such that she was not able to mentally concern herself with traffic laws * * *." The court of appeals held that this statement "establishes that * * * [Curry] was legally insane at the time of the accident since it establishes that she did not know her act of driving left of center was wrong." We disagree.

This court held in State v. Thomas (1982), 70 Ohio St. 2d 79, 24 O.O. 3d 150, 434 N.E. 2d 1356: "The weight to be given the evidence and the credibility of the witnesses concerning the establishment of the defense of insanity in a criminal proceeding are primarily for the trier of the facts. * * *" (Citations omitted.) Id. at syllabus. Here the trial court considered the deposition of Dr. Sherman, the numerous state objections recorded therein, and the substance and credibility of the testimony presented by the defense. The trial court was obviously in the

---

[2] Dr. Sherman's deposition was admitted, by stipulation and court approval, in lieu of a court-ordered evaluation pursuant to R.C. 2945.39. The parties stipulated that Curry was competent to stand trial, and, as to the substance of Dr. Sherman's testimony, the state stipulated "to that testimony to the extent that were he here he would testify to that * * *."

best position to determine whether Curry was insane at the time of the offense.

Contrary to the conclusion reached by the court of appeals below, the finding by the trial court that Curry "was not able to mentally concern herself with traffic laws" is *not* equivalent to a finding that Curry was insane at the time of the accident. The trial court stated that Curry's condition was "caused by a combination of her personal problems and self imposed lack of sleep[,]" and that "it was negligent for the defendant to be operating a motor vehicle at all in the mental state that she was in. Just as though she had been intoxicated." As suggested by the trial court, a voluntarily intoxicated person may be unable to "concern himself with traffic laws," yet such intoxication would not be a defense to negligent vehicular homicide, specific intent not being an element of that offense. See, generally, *State* v. *Fox* (1981), 68 Ohio St. 2d 53, 54-55, 22 O.O. 3d 259, 260, 428 N.E. 2d 410, 411-412. Similarly, a person who operates a motor vehicle in a negligent manner following a self-imposed lack of sleep, and thereby causes the death of another, may be convicted of negligent vehicular homicide.

This is not a case of overwhelming evidence of the defendant's insanity. Cf. *State* v. *Brown* (1983), 5 Ohio St. 3d 133, 5 OBR 266, 449 N.E. 2d 449. The witnesses on Curry's behalf testified that she was emotionally distraught and had gone without sleep prior to the accident. Dr. Sherman stated that she was suffering from a disorganization of thought which rendered her incapable of appreciating the criminality of her conduct. The trial court duly considered this evidence and the state's objections to Dr. Sherman's legal conclusions. Thus, we will not disturb the trial court's finding that Curry failed to overcome the presumption of her sanity by a preponderance of the evidence.

For the foregoing reasons, the judgment of the court of appeals, finding appellee not guilty by reason of insanity, is reversed, and the judgment of the trial court is reinstated.

*Judgment accordingly.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, H. BROWN and EVANS, JJ., concur.

JOHN R. EVANS, J., of the Third Appellate District, sitting for RESNICK, J.