DECISION.
{¶ 1} Defendant-appellant Lydia Honnaker has suffered from severe mental illness for most of her life. On November 10, 2003, Honnaker was a patient at the Summit Behavioral Heathcare Center ("Summit"), having been found not guilty by reason of insanity in a prior criminal case. One of the other patients in Honnaker's unit was "acting up." The patient, who was at the nurse's station, was agitated, screaming, and difficult to manage. Honnaker was upset by the other patient's behavior. Honnaker left the area of the nurse's station, but later returned. Honnaker told the staff that she could "come over this desk" and that she "didn't care about" any of them.
 {¶ 2} Dr. Sarah Mills, a Summit psychologist, was trying to calm the other patient. Honnaker motioned to Dr. Mills. Dr. Mills followed Honnaker down the hall in order to talk to her. Honnaker was clearly upset, so Dr. Mills spoke to Honnaker about what she could do to calm herself. Honnaker gave various appropriate responses such as going for a walk or reading. Dr. Mills believed that Honnaker was going to walk back down the hall. At that point, Honnaker grabbed Dr. Mills around the neck and pushed a crochet needle into her throat. Honnaker then very softly told Dr. Mills, "You are going to take your keys and open up this door." Dr. Mills began to scream for help. Summit staff arrived and subdued Honnaker. Honnaker was given Ativan to calm her. Subsequently, Honnaker made apparent suicide attempts by drinking a bottle of nail polish and cutting her wrists.
 {¶ 3} Honnaker was charged with kidnapping. She entered a plea of not guilty by reason of insanity and filed a suggestion of incompetence. She was found competent to stand trial. Following a bench trial, she was found guilty of attempted kidnapping. Honnaker was sentenced to three years of community control, with intensive supervision for, among other things, mental illness. In addition, Honnaker was ordered to comply with mental health treatment and to abstain from using illegal drugs. Honnaker has appealed.
 {¶ 4} Honnaker's sole assignment of error alleges that the trial court's judgment rejecting her insanity defense and finding her guilty of attempted kidnapping was against the manifest weight of the evidence. Honnaker argues that she presented overwhelming evidence that she suffered from a severe mental illness, and that because of that illness, she had not been able to appreciate the wrongfulness of her conduct. Further, Honnaker argues that the trial court ignored the testimony of psychiatrists Dr. Cyma Khalily and Dr. James Hawkins that she was insane at the time of the incident.
 {¶ 5} In order to establish her insanity defense, Honnaker had to prove by a preponderance of the evidence that, as a result of a severe mental disease or defect, she did not know the wrongfulness of her acts. See State v. Johnson, 1st Dist. Nos. C-020256 and C-020257, 2003-Ohio-3665; R.C. 2901.01(A)(14) and2901.05(A). "The weight to be given the evidence and the credibility of the witnesses concerning the establishment of the defense of insanity in a criminal proceeding are primarily for the trier of the facts." See State v. Thomas (1982),70 Ohio St.2d 79, 434 N.E.2d 1356, syllabus. In State v. Johnson,
supra, citing State v. Curry (1989), 45 Ohio St.3d 109,543 N.E.2d 1228, and State v. Brown (1983), 5 Ohio St.3d 133,449 N.E.2d 449, we stated, "Thus, if the record demonstrates that the trial court, as the trier of fact, considered the insanity defense, the reviewing court should defer to the trial court's interpretation of the evidence. Moreover, a reviewing court should only reverse a trial court's judgment on the defense of insanity where the trial court was presented with overwhelming and uncontradicted evidence of the defendant's insanity, and where that evidence was arbitrarily ignored."
 {¶ 6} There was no dispute at trial that Honnaker suffered from a severe mental illness. The question was whether that illness prevented Honnaker from appreciating the wrongfulness of her acts.
 {¶ 7} Summit psychiatrist Dr. Prabha Mannava testified that after the incident Honnaker seemed calm and her mood was stable. Honnaker was not paranoid or delusional. According to Dr. Mannava, Honnaker's thought process was clear. When Dr. Mannava tried to question Honnaker about the incident, Honnaker stated that she would not answer any questions without her mother, who was also her legal advocate, being present.
 {¶ 8} Clinical psychologist Dr. Carla Dreyer testified on behalf of the state, and her report was admitted into evidence. Dr Dreyer interviewed Honnaker for approximately one hour and twenty-five minutes on February 6, 2004, at the Hamilton County Justice Center. Dr. Dreyer also reviewed a series of documents, including Honnaker's Summit records. Dr. Dreyer stated that Honnaker had "selective memory" of the incident. Honnaker remembered events immediately before and after the incident, but had no memory of the offense itself. Honnaker reported shaking and having racing thoughts before attacking Dr. Mills and later attempting suicide. The records reviewed by Dr. Dreyer showed that, within one hour prior to the incident, Honnaker had tried to coerce a Summit staff member to let her leave the unit without permission. Shortly after the incident, Honnaker told staff members that she wanted to leave Summit to be with her ex-husband.
 {¶ 9} Dr. Dreyer testified that, in her opinion, Honnaker suffered from a severe mental illness, but that Honnaker did not meet the definition for legal insanity at the time of the offense. Dr. Dreyer based her opinion on Honnaker's statements before and after the incident that she wanted to leave Summit, her refusal to answer questions without her mother being present, her failure to appear delusional, paranoid, or out of touch with reality during or shortly after the incident, and her calm manner during the incident.
 {¶ 10} The state also presented the testimony and report of clinical psychologist Jennifer O'Donnell. Dr. O'Donnell interviewed Honnaker at Summit for about one hour and ten minutes on May 27, 2004, and she reviewed documentary material along with Honnaker's Summit records. Dr. O'Donnell's report indicated that, before Honnaker grabbed Dr. Mills, Honnaker had asked Dr. Mills for "level four privileges" so that Honnaker could obtain passes to leave Summit. Dr. O'Donnell testified that, in her opinion, Honnaker suffered from a severe mental illness, but that illness did not interfere with Honnaker's perception of reality at the time of the incident because Honnaker did not display any bizarre or unusual behavior in the actions leading up to the offense. In Dr. O'Donnell's opinion, Honnaker's actions in apologizing, requesting to speak to her mother, and refusing to speak to Dr. Mannava indicated that Honnaker appreciated the wrongfulness of her acts.
 {¶ 11} Honnaker presented the testimony and report of forensic psychiatrist Dr. Cyma Khalily, who evaluated Honnaker for almost two hours at Summit on September 19, 2004. Dr. Khalily also reviewed extensive documentary information including Honnaker's medical records and the reports of the other experts in the case. Dr. Khalily noted that Honnaker often carried a crochet hook but had never used it as a weapon before the incident with Dr. Mills. Honnaker reported to Dr. Khalily that she liked Dr. Mills and did not remember attacking her. Dr. Khalily noted that on October 23, 2003, Honnaker's medications were a "suboptimal" dose of Depakote, a mood stabilizer, Wellbutrin, an activating antidepressant, Abilify, an activating antipsychotic, and Lamictal, which had been restarted with an inappropriate dosage that caused side effects. At the time of the incident, Honnaker had been taken off her medication because overdoses of Lamictal, along with Depakote, had caused liver damage.
 {¶ 12} Dr. Khalily testified that Honnaker met the definition of not guilty by reason of insanity. Dr. Khalily stated that Honnaker had demonstrated up-and-down mood swings, unpredictable behavior, impulsiveness, and sudden fits of anger. Dr. Khalily noted that, just prior to the incident with Dr. Mills, Honnaker had been angry and agitated. Dr. Khalily stated that Honnaker's medications were not at the optimum level, which contributed to Honnaker's agitation or "cycling" of up-and-down mood swings. In Dr. Khalily's opinion, Honnaker was unable to appreciate the wrongfulness of her acts because she was not on the optimum dosage of her medicine.
 {¶ 13} The testimony and report of psychiatrist Dr. James Hawkins was admitted on Honnaker's behalf. Dr. Hawkins examined Honnaker at the Hamilton County Justice Center on February 24, 2004. Dr. Hawkins also reviewed documentary evidence that included Honnaker's medical records. In Dr. Hawkins's opinion, Honnaker, at the time of the offense, was experiencing a "manic episode precipitated by inappropriate medications." Dr. Hawkins stated that Honnaker's failure to recall the incident suggested "a delirium as a result of medications." Dr. Hawkins opined that Honnaker's active mental illness, along with the combination of medications she was taking, rendered her unable to appreciate the wrongfulness of her acts.
 {¶ 14} Honnaker also presented the testimony of psychiatrist Dr. Patrick Swanson, who had treated Honnaker since she was fifteen years old. Dr. Swanson stated that when Honnaker was in a manic state, she was sometimes not able to appreciate what she was doing. Dr. Swanson testified that he had seen Honnaker "in hyped-up states where she has been irrational and not able to control herself."
 {¶ 15} The trial court found that Honnaker suffered from bipolar syndrome, a severe mental disease. In turning to the question whether Honnaker could appreciate the wrongfulness of her acts, the trial court stated that it was troubled because Dr. Khalily's report was "gravely retrospective." In fact, Dr. Khalily stated in her report that she was at a "distinct disadvantage" because her evaluation of Honnaker was done approximately ten months after the offense, which made it more difficult for Honnaker to recall the incident.
 {¶ 16} The trial court also expressed concerns about Dr. Hawkins's testimony. The court stated, "I asked Dr. Hawkins since [Honnaker] claims that she has no memory of the events, the attack itself, how he could determine that, in her mind, what she did was not wrong. The record won't reflect that because it is printed, but we all sat here and waited and waited and Dr. Hawkins looked at the ceiling. He couldn't answer the question. He went back and reiterated his opinion that in his opinion, she fit the criteria but he failed to answer the question."
 {¶ 17} In rejecting Honnaker's not-guilty-by-reason-of-insanity defense, the trial court stated, "I think that my opinion has to rest on the failure of Dr. Hawkins to answer my question. We do have this from all of the professional witnesses, from the two psychologists, from the two psychiatrists and even from Dr. Mannava that immediately preceding this incident, [Honnaker] had full awareness and articulation as to what occurred, immediately after she had full awareness and articulation. It seems she had this memory lapse for just a brief instant[.] * * * One of the psychologists apparently characterized this as selective memory. There is nothing in the record to indicate that at the time of this occurrence [Honnaker] was suffering from any delusional signs. No one has testified she made any bizarre statements, she did any bizarre activities[.] * * * She had no delusional signs at all. * * * All the evidence that we have indicates that [Honnaker] acted deliberately, coherently, appropriately, in all of her activities before the incident and even during the incident. From the description of the people involved, she was clear in what she was doing, she grabbed Dr. Mills around the neck, had her in a headlock, she said to her, you are going to take your keys and open this door."
 {¶ 18} In State v. Johnson, supra, we upheld the trial court's judgment rejecting Johnson's insanity defense. Johnson had devised a plan to commit suicide by firing a gun through a window in a residential area, forcing police to shoot him. Ultimately, Johnson's suicide attempt was unsuccessful. Johnson pleaded not guilty by reason of insanity to various counts. One psychologist testified on behalf of the state, opining that Johnson could appreciate the wrongfulness of his conduct based upon his well-organized behavior at the time of the incident, his awareness of what he was doing, and his understanding of the possible consequences of his actions. Johnson presented the testimony of three experts, including two psychiatrists, who testified that Johnson could not have appreciated the wrongfulness of his conduct because he was not taking his medication, which aggravated his mental illness, was delusional, paranoid, and suicidal, and was acting out a bizarre and illogical plan at the time of the offenses. We upheld the trial court's rejection of Johnson's insanity defense, holding that the court's judgment was not against the weight of the evidence because the court had acted within its discretion in according more weight to the testimony of the state's expert.
 {¶ 19} The trial court in the instant case clearly considered all the evidence presented by both parties on the issue whether Honnaker appreciated the wrongfulness of her conduct. The evidence was conflicting. The court did not arbitrarily ignore Honnaker's evidence; rather, it chose to accord more weight to the state's evidence. The court acted within its discretion, and we cannot say that its decision was against the manifest weight of the evidence. The assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
Hildebrandt and Painter, JJ., concur.