OPINION
{¶ 1} Defendant-appellant, Andrew Leisure, appeals his conviction in the Preble County Court of Common Pleas for aggravated murder, tampering with evidence, gross abuse of a corpse, theft, and aggravated robbery. We affirm the decision of the trial court.
 {¶ 2} On January 15, 2006, appellant shot and killed his father, Ronald Leisure. He was arrested by police the following day and provided two statements detailing the events involved. A competency evaluation was performed on May 11, 2006. Appellant was found not competent to stand trial and was hospitalized at Twin Valley Behavior Health Center. On *Page 2 
May 7, 2007, the court found, based on the opinions of two experts, that appellant was now competent to stand trial. A bench trial was held on September 17, 18 and 19, 2007. At trial, appellant did not dispute the fact that he had killed his father. Instead, the issue before the court was whether appellant was not guilty of the murder by reason of insanity. The court heard the testimony of two experts and determined that appellant had not established a not guilty by reason of insanity defense and found him guilty of the charged offenses.
 {¶ 3} Appellant now appeals his conviction, raising a single assignment of error for our review. His sole argument on appeal relates to the trial court's decision that appellant did not establish a defense of not guilty by reason of insanity. He argues this finding is not supported by the manifest weight of the evidence.
 {¶ 4} At trial, the facts surrounding the shooting and appellant's mental condition were introduced by means of police interviews and the testimony of mental health professionals. This evidence established that appellant lived with his father at a house in Preble County. On the day of the shooting, the victim called appellant and stated that he was on his way home. Appellant took a gun from his father's dresser and loaded it. While waiting for his father to return, appellant debated whether or not to shoot his father. After hearing his father's vehicle in the driveway, appellant walked outside and shot his father three times as he walked toward the house. Appellant then went back inside the house, reloaded the gun and returned outside. His father begged appellant to call 911. However, appellant stood over him and shot his father twice in the head, causing instantaneous death.
 {¶ 5} Appellant then emptied a bag that his father carried, looking for prescription medications. He tied his father's body to a four-wheeler and dragged the body across the farm where they lived and behind a chicken coop. He also took money out of his father's wallet and searched the body for drugs. He later returned and placed the body inside the chicken coop. Appellant cleaned up blood on his clothing and threw away his father's bloody *Page 3 
hat and glasses and turned over dirt at the site of the shooting to cover up the blood.
 {¶ 6} Appellant went inside the house and took change that his father kept inside. He took the change, along with cash from the wallet and the prescription drugs, and drove his father's truck to pick up a friend. The two drove around, searching for someone who could sell drugs to them. They were unsuccessful that evening, but began their search again the next morning and appellant was able to purchase and use cocaine. Appellant was arrested after his father's girlfriend discovered the victim was missing and called police.
 {¶ 7} Evidence was presented to show that appellant had been previously admitted to the psychiatric unit at Reid Hospital for paranoid behavior in May and June 2004. At the time, he had been using drugs and was seeing visions and hearing voices and believed numerous people wanted to kill him.
 {¶ 8} According to interviews with appellant, he believed that his father had the ability to look a person in the eyes and yell, scream and swear at them and the person would become unconscious or hypnotized. He stated that his father would often perform this act on him and was killing him. He blamed his father for making him gay and also stated that he heard voices and was seeing things. In interviews with police and mental health professionals, appellant stated that he felt that he had to kill his father or his father would eventually kill him or make him kill someone else.
 {¶ 9} At trial, Dr. Kim Stookey testified that appellant was legally insane at the time of the offense. Dr. Stephen Noffsinger testified that appellant had a mental illness at the time of the offense, but because he was able to understand the wrongfulness of his actions, was not legally insane. The court considered the testimony and found that appellant did not meet his burden to establish a not guilty by reason of insanity defense. As mentioned above, this determination is the sole issue on appeal.
 {¶ 10} Insanity is an affirmative defense, placing the burden on the accused to *Page 4 
establish the defense by a preponderance of the evidence. R.C. 2901.05(A); State v. Brown (1983), 5 Ohio St.3d 133. The Ohio Revised Code provides the standard courts must follow when determining whether a defendant has established an insanity defense: "[a] person is `not guilty by reason of insanity' relative to a charge of an offense only if the person proves * * * that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14). "The weight to be given the evidence and the credibility of the witnesses who provide opinions regarding the defense of insanity in a criminal proceeding are primarily for the trier of fact." State v.Curry (1989), 45 Ohio St.3d 109.
 {¶ 11} Drs. Stookey and Noffsinger provided expert opinions at trial on the issue of whether appellant was legally insane at the time of the offense. Both experts agree that appellant was suffering from a mental disease or defect at the time of the offense. Their opinions differed, however, on the issue of whether appellant knew the wrongfulness of his actions at the time.
 {¶ 12} Dr. Stookey is a clinical psychologist who performs forensic evaluations. She testified that she first examined appellant in March 2006 to determine his competency to stand trial, and found that he was incompetent at that time. She examined appellant again in March 2007 and found that although he had not completely abandoned his delusional beliefs, he was now considering things and was competent to stand trial. On April 9, 2007, she prepared an evaluation regarding appellant's sanity at the time of the offense. Dr. Stookey explained that she diagnosed schizophrenia, paranoid type, and that appellant did not understand the wrongfulness of his actions because he believed he was justified in ending his father's life based on the delusional belief that his father was going to kill him or force him to kill an innocent person. She stated that the motivation for the killing was the delusional belief. *Page 5 
 {¶ 13} Dr. Noffsinger, a forensic psychiatrist, reviewed the relevant information and examined appellant in May 2007 in order to determine appellant's sanity at the time of the offense. He diagnosed appellant with a "psychotic disorder, not otherwise specified," because his symptoms did not fit neatly into a more specific psychotic diagnosis. While Dr. Noffsinger concluded that appellant had a severe mental illness at the time of the offense, the psychiatrist found that this mental disease did not cause him to fail to understand the wrongfulness of his actions. Instead, Dr. Noffsinger determined that despite having a severe mental illness, appellant still knew the wrongfulness of his actions. He stated that while appellant did have an irrational belief that he was going to be harmed by his father, this belief was outweighed by the desire to purchase drugs as the motive for the murder.
 {¶ 14} Dr. Noffsinger explained that there was a rational motive for the killing in that appellant wanted to obtain drugs. He discussed how appellant stated this fact during his interview with the psychiatrist and that appellant stated the desire to obtain drugs was the primary motive and the irrational belief about his father was a minor factor. Dr. Noffsinger further explained how the facts surrounding the killing supported the drug motive, particularly appellant's actions the day before and immediately prior to the killing when appellant spent the day and night with his father with no problems, issues or concerns. He also found the facts occurring directly after the murder supported this motive, as appellant immediately searched the body, took drugs from his father's bag, stole change and left to find a place to purchase drugs. Dr. Noffsinger also found the fact that, shortly after the murder, appellant hid the body and removed evidence of the crime, including moving bloody dirt around, and lied to his father's girlfriend about his father's whereabouts, supported a finding that appellant knew the wrongfulness of his actions.
 {¶ 15} The court carefully considered the opinions of the two experts and ultimately determined that appellant did understand the wrongfulness of his actions at the time of the *Page 6 
offense. The court found Dr. Noffsinger's opinion that appellant's conduct before, during and immediately after the murder weighed in favor of finding that while suffering from a mental illness, appellant still knew the wrongfulness of his actions.
 {¶ 16} On appeal, appellant argues that Dr. Stookey's opinion should have been relied on by the trial court, and not Dr. Noffsinger's. Appellant argues that Dr. Stookey interviewed appellant several times and the first time was shortly after the murder. He also argues that his statements to police regarding the reason for the murder should have been given more weight because they were given one day after the murder. Appellant contends that he was adamant in his statements that the delusional beliefs were the motivation for the murder from the time it occurred until May 2007, and the first time the drug motive appeared was in the interview with Dr. Noffsinger.
 {¶ 17} However, Dr. Noffsinger explained that while it is true that the passage of time can impair a patient's ability to relate the nature of the offense, it is also true that with treatment a patient's mind can become more organized and they can better recount what they did and the reasons for it. He stated that appellant brought up the mixed motive during the interview and further clarified his motivation with questioning. Dr. Noffsinger further explained that he did not believe appellant was now concocting a new story regarding his motive for the murder because what appellant told him fit with the evidence and his behavior. Dr. Noffsinger explained that actions that might have been consistent with "paranoid self-defense" were not present, such as telling other people his concern regarding his father, confronting his father, or fleeing the house. He further explained that appellant had a history of drug abuse and addiction and a pattern of committing crimes to get drugs, and his actions immediately after the crime support the drug motive.
 {¶ 18} Considering the evidence as a whole, we cannot say that the trial court's determination that appellant understood the wrongfulness of his actions was against the *Page 7 
manifest weight of the evidence. Both experts presented facts and reasoning to support their opinions and weight and credibility are issues for the trial court to determine. Accordingly, appellant's sole assignment of error is overruled.
 {¶ 19} Judgment affirmed.
 YOUNG and POWELL, JJ., concur. *Page 1