[Cite as *State v. Wilson*, 2014-Ohio-461.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2013 CA 00078 |
| CHARLES E. WILSON | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County
                              Court of Common Pleas, Case No. 2012-
                              CR-0783

JUDGMENT:                     Affirmed


DATE OF JUDGMENT ENTRY:       February 10, 2014


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN FERRERO                          EARLE WISE, JR.
STARK COUNTY PROSECUTOR               122 Central Plaza, North
BY: RENEE WATSON                      Canton, OH  44702
110 Central Plaza South, Ste. 510
Canton, OH 44702

*Gwin, J.,*

{¶1} Defendant-appellant Charles E. Wilson appeals his conviction entered by the Stark County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

*Facts and Procedural History*

{¶2} On June 18, 2012, appellant was indicted on two counts of felonious assault under R.C. 2903.11(A)(1), felonies of the second degree, and one count of assault on a peace officer in violation of R.C. 2903.13(A) and (C)(3), a felony of the fourth degree. Appellant was arraigned with retained counsel on June 22, 2012, and also filed a written notice of plea of not guilty by reason of insanity. On September 7, 2012, appellant's retained counsel filed a motion to withdraw as counsel for appellant. The trial court granted appellant's motion on September 11, 2012 and appointed Attorney Powers of the Stark County Public Defender's Office to represent appellant. On September 13, 2012, appellant filed a second plea of not guilty by reason of insanity and requested a neuropsychological competency evaluation. The trial court granted appellant's request for evaluation on September 18, 2012.

{¶3} On January 23, 2013, appellant filed a letter with the trial court and requested the trial court appoint counsel for him other than the public defender's office. Appellant stipulated to the competency evaluation on February 11, 2013 and was found competent to stand trial.

{¶4} A jury trial commenced on March 25, 2013. Prior to the seating of the jury, the trial court asked appellant about his January 2013 letter. Appellant stated that he was not given a proper chance to prepare. Appellant stated that he was "not disputing because a lot of things that I don't remember, but at the same time I would be

accountable for the things that basically like the stipulations or the, what do I want to say?  Like I felt like I've been over-indicted.  That's all."  The trial court found appellant failed to show good cause to excuse his attorney.  After the trial judge indicated she was bringing in the jurors, appellant stated he wanted to fire his attorney, that he had no recollection of the events that occurred, and would like to be sentenced to the minimum five years.  However, after the trial court inquired of appellant, he stated he did not want to proceed pro se.

{¶5}  When the trial court inquired of appellant the next morning after the jury was seated, appellant indicated he had received all the information he requested from his attorney and was ready to proceed with the trial.  Also after the jury was empanelled, Attorney Kuhn brought to the trial court's attention a letter from the Stark County Bar Association, indicating appellant filed a grievance against his retained counsel, Attorney Powers, and Attorney Kuhn on March 20, 2013.  Attorney Kuhn stated that, even though the letter stated the Stark County Bar Association declined to take any action against any of the attorneys, it is the policy of his office to seek to withdraw as counsel in a case where a grievance has been filed against the office.  The trial judge stated that Attorney Kuhn appeared to be prepared for trial, had gone forward with selecting and seating a jury, and asked Attorney Kuhn if he could continue to give the trial his best efforts.  Attorney Kuhn stated he could give the trial his best effort.  The trial court denied Attorney Kuhn's motion to withdraw because the trial had already commenced and because there was no good cause for the withdrawal.

{¶6}  During the trial, the State of Ohio presented fourteen witnesses.  Joseph Lee ("Lee") testified that on May 13, 2012 he and his brother's girlfriend Regina Ayers

("Ayers") were walking on Alan Page Drive in Canton, Ohio, headed to the Hall of Fame Fuel Mart at approximately 6:00 p.m. As the two were walking, Lee stated a man ran up behind them and punched Ayers, knocking her to the ground. Lee testified the unidentified male started jumping up and down on Ayers' head, beat her, kicked her with both of his feet on the side of her head, kicked her in the gut, and jumped up and down on her head. Lee stated Ayers was bleeding out of one ear, her mouth, and her breathing was labored. The male also punched Lee in the face, knocked him to the ground, and kicked him. Lee testified when another male showed up and told the attacker to go away, the male who injured them walked a short distance to a sign approximately 50 yards away, where he bent and twisted the sign until the police responded. Lee identified the male who attacked him and Ayers on May 13, 2012 as appellant. Lee stated he did not know appellant and had never seen him before.

{¶7} On cross-examination, Lee stated his injury did not affect his vision and he never "zoned out" during the incident. Lee denied knowing any of the other individuals at the scene and stated he did not live in the area, but was visiting his brother.

{¶8} Officer Victoria Sellers ("Sellers") of the Canton Police Department was the first officer who arrived on the scene. Sellers approached a man clutching a street sign due to the information from the 9-1-1 tapes indicating the suspect was bending or twisting a stop sign. Sellers stated there were several women around the man, going through his pockets, and that one woman told Sellers she was the man's mother. Sellers identified the man at the street sign on May 13, 2012 as appellant. Appellant struggled with the police when they attempted to handcuff him and place him in the patrol wagon. Sellers stated appellant was conscious, yelling, not making sense, and

violently struggling as the officers placed him into the patrol wagon. Sellers transported appellant to the Stark County Jail and seized his clothing for testing, including a sweatshirt, t-shirt, jacket, pants, and shoes. On cross-examination, Sellers testified she did not arrive until the assault had ended and the area where the incident occurred was a high-crime area.

{¶9} Officer Michael Nordick ("Nordick") of the Canton Police Department confirmed the 9-1-1 callers stated the suspect was shaking a stop sign. Nordick identified appellant as the suspect who was at the stop sign when he arrived and testified that Lee identified appellant as his attacker when Nordick spoke to Lee at the scene. Nordick concurred with Sellers that appellant was yelling and screaming incoherently. Nordick testified he saw appellant kick Officer Gillilan in the face. Further, that Officer Gillilan and all of the officers were in uniform and in marked cruisers. Nordick testified there were other individuals at the scene, but he was unable to locate these witnesses to the crime.

{¶10} Officer Todd Gillilan ("Gillilan") of the Canton Police Department testified he was in uniform on May 13, 2012. When Gillilan tried to assist in getting appellant into the patrol wagon, appellant kicked Gillilan in the face, knocked his glasses off, and cut his eye. Gillilan was transported to Aultman Hospital for treatment and had a cut and abrasion on his eye. Gillilan identified appellant as the individual who kicked him in the face on May 13, 2012.

{¶11} Dr. O'Toole, the emergency room doctor at Aultman Hospital, testified he cared for Ayers when she was admitted to the emergency room on May 13, 2012. Ayers had injuries to her head, face, and chest. She was breathing on her own, but was

not responsive.  Dr. O'Toole stated Ayers had a collapsed right lung, injuries to her face and scalp, bleeding and swelling in her brain, and a fracture of her cheekbone.  Ayers never regained consciousness and remains in a coma.

{¶12} Jennifer Creed ("Creed") of the Canton-Stark County Crime Lab testified at the trial.  She received the clothing of appellant that was seized by Sellers at the Stark County Jail, along with DNA standards from appellant, Ayers, and Lee.  Creed initially tested the clothing and identified blood spatter on the outside of appellant's jacket, jeans, t-shirt, and shoes.  After further testing, Creed determined the blood stains on appellant's jacket and jeans matched the DNA of Lee.  Creed stated the levels of DNA on appellant's t-shirt were too low to make a determination as to their source.  Creed testified appellant's right shoe was stained with blood from two possible contributors – Lee and Ayers.

{¶13} The jury returned a verdict of guilty of Counts I, II, and III.  Appellant was sentenced to eight (8) years on each count of felonious assault and eighteen (18) months for assault on a peace officer, each to be served consecutively.  The trial court also sentenced to appellant to 501 days for violation of his post-release control in Case Number 2002CR1150.

{¶14} Appellant now appeals and assigns as error the following:

{¶15} "I. THE TRIAL COURT ERRED WHEN IT FAILED TO ADEQUATELY INQUIRE INTO A CONFLICT OF INTEREST RAISED BY DEFENSE COUNSEL'S REQUEST TO WITHDRAW AND THEREBY DEPRIVED APPELLANT OF HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO COUNSEL AND TO DUE PROCESS OF LAW, AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH

AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶16} II. THE EVIDENCE PRESENTED AT TRIAL IS INSUFFICIENT TO SUSTAIN THE CONVICTIONS AND THE VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶17} The determination of whether to allow an attorney to withdraw from a case is reviewed by an appellate court under an abuse of discretion standard. *State v. Cowans*, 87 Ohio St.3d 68, 73, 717 N.E.2d 298 (1999). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶18} Appellant argues this case is analogous to *State v. Smith*, 5th Dist. Richland Nos. 94-CA-62, 94-CA-64, 1995 WL 557408 (August 28, 1995) ("*Smith I*"), in which this Court sustained appellant's assignment of error with regards to counsel's motion to withdraw at a revocation hearing. In *Smith I*, the trial court did not conduct a hearing to determine whether a conflict existed and the trial court noted that since counsel for Smith was being paid by the court to represent appellant and was an officer of the court, he could thus discharge his duties. *Id.*

{¶19} Appellant contends the trial court failed to inquire into a conflict before denying Attorney Kuhn's motion to withdraw because appellant filed a grievance against him with the local bar association. We disagree. Unlike in the *Smith I* case, the trial court complied with its affirmative duty to inquire as to whether a conflict of interest

actually exists. See *State v. Gillard*, 64 Ohio St.3d 304, 595 N.E.2d 878 (1992). After the jury was seated, Attorney Kuhn informed the trial court about a letter from the Stark County Bar Association in response to a grievance filed by appellant against Attorney Kuhn, Attorney Powers, appellant's former attorney, and Ryan Ramage, also appellant's former attorney. Attorney Kuhn informed the trial court that, according to the letter, the Stark County Bar Association declined to take further action on appellant's grievance, but that it is the policy of the public defender's office to seek to withdraw in a case where a grievance is filed against an attorney. The trial court noted that Attorney Kuhn began the trial and appeared to be prepared to continue the trial. When the trial court asked Attorney Kuhn if he felt he could continue with the trial and give the trial his best efforts, Attorney Kuhn responded that he could. This case is thus analogous to *Smith II*, in which the attorney stated a pending grievance did not affect his judgment or representation. *State v. Smith*, 5th Dist. Richland No. 95-CA-78, 1996 WL 363768 (May 21, 1996) (*"Smith II"*). Accordingly, the trial court in this case properly inquired as to whether a conflict of interest actually existed between appellant and Attorney Kuhn due to the filing of the grievance that the Stark County Bar Association chose not to further pursue. Attorney Kuhn then confirmed he was prepared for trial and would give the trial his best efforts.

{¶20} Further, a claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). The second prong is whether appellant was prejudiced by counsel's

ineffectiveness. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*

{¶21} Appellant's argument is based on the proposition that Attorney Kuhn had a conflict of interest and that, as a result of this conflict, his counsel failed to vigorously represent him. This argument fails for several reasons. First, as noted above, the record does not affirmatively reflect that Attorney Kuhn had a conflict of interest, as he confirmed to the trial court he was prepared to go to trial, confirmed he could give this trial his best efforts, and because the local bar association declined to take any action on appellant's grievance against Attorney Kuhn and his former attorneys.

{¶22} Second, even if an actual conflict did exist, appellant still bears the burden of showing the conflict caused Attorney Kuhn's performance to be actually deficient in some way. Appellant has not argued or shown that any decision or act of Attorney Kuhn was in any way affected by the alleged conflict. In fact, on the morning of the trial, appellant indicated he had received all the information he requested from his attorney and was ready to proceed with the trial. There is no indication that the grievance filed against him by appellant with the local bar association affected Attorney Kuhn's professional judgment in his handling of the trial or changed the quality of his representation. In this case, appellant has failed to establish that the existence of a grievance filed with the local bar association who declined to pursue the matter caused any conflict which prejudiced appellant in this case. Accordingly, appellant's first assignment of error is overruled.

II.

{¶23} In his second assignment of error, appellant argues his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We disagree.

{¶24} The concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held,

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

{¶25} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence,

the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶26} Appellant was found guilty of two counts of felonious assault pursuant to R.C. 2903.11(A)(1), which states that, "No person shall knowingly * * * cause serious physical harm to another or to another's unborn." R.C. 2903.11(A)(1).

{¶27} Appellant argues his convictions for felonious assault were against the manifest weight and sufficiency of the evidence because the identification of appellant was insufficient to warrant a finding of guilt, Lee's testimony was not credible, the DNA analysis was insufficient to convict appellant, and there was an insufficient chain of custody linking the shoes and clothing to appellant. We disagree.

{¶28} Though appellant argues Lee's testimony was not credible, Lee unequivocally testified the man that attacked and seriously injured him and Ayers walked to a sign approximately fifty (50) yards away and remained there bending and twisting the sign until the police arrived. Lee explicitly identified appellant as the male who attacked them on May 13, 2012. Officers Sellers and Nordick testified the information from the 9-1-1 calls was that the suspect was clutching a street sign near the crime scene. Both Sellers and Nordick identified appellant as the individual at the street sign when each arrived at the scene. In addition, Nordick stated that, at the scene on May 13, 2012, Lee identified appellant as the individual who attacked himself and Ayers. The weight of the evidence and the credibility of the witnesses are

determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 767 N.E.2d 216 (2002). Reviewing the record, there is no indication the jury lost its way in determining the credibility of Lee and the officers that confirmed Lee's identification of appellant and testimony regarding the incident.

{¶29} Appellant contends the DNA evidence was insufficient to identify him as the assailant and advances other theories as to how the blood splatter could have appeared on his clothing. Appellant also argues the chain of custody of his clothing and shoes was insufficient for a conviction. Creed testified that after initially testing the clothing and shoes, she identified blood splatter on appellant's jacket, jeans, t-shirt, and shoes. After further testing, Creed could not determine the source of the stains on the t-shirt, but did determine that, to a reasonable degree of certainty, the blood stains on appellant's jacket and jeans matched the DNA of Lee and the right shoe of appellant was stained with blood from two possible contributions – Lee and Ayers. This comports with Lee's testimony that appellant kicked him and repeatedly kicked Ayers in the head. As noted above, the credibility of Creed's testimony and any alternate theories of DNA sources are determined by the trier of fact and there is no indication the jury lost its way in determining the credibility of Creed and in weighing the DNA evidence.

{¶30} Further, "[t]he state is not required to prove a perfect, unbroken chain of custody * * * a break in the chain of custody, if any, goes to the weight or credibility of the evidence, and not its admissibility." *State v. Semedo*, 5th Dist. Stark No. 2006-CA-00108, 2007-Ohio-1805. In this case, Sellers testified she seized appellant's shoes and clothes as evidence after he was transported to the Stark County Jail. Creed testified the lab is not open to the public and is only open to individuals employed by the lab.

Creed stated the items were received into the lab in sealed paper bags on May 14, 2012. The shoes were in one paper bag and the clothing was in a separate paper bag. She testified the clothing and shoes were first opened and examined for the presence of biological samples. After the items were examined for biological samples, they were placed into clear plastic bags, sealed, and then DNA typing was completed on a sample of each bloodstain. Based upon the testimony of Sellers and Creed, we find there is no indication the jury lost its way in determining the credibility and weight of the DNA evidence and its chain of custody.

{¶31} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant committed the crimes of felonious assault. Based on the evidence presented at trial, we find appellant's convictions for felonious assault were supported by the manifest weight and sufficiency of the evidence.

{¶32} Appellant was also convicted of one count of assault of a peace officer in violation of R.C. 2903.13(A) and (C)(3) which state the following:

> (A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn. * * *

> (C) Whoever violates this section is guilty of assault. Except as otherwise provided in division (C)(1), (2), (3), (4), or (5) of this section, assault is a misdemeanor of the first degree. ***

>> If the victim of the offense is a peace officer * * * while in the performance of their official duties, assault is felony of the fourth degree.

R.C. 2903.13(A) and (C)(3).

{¶33} Appellant argues he did not knowingly assault Officer Gillilan. We are not persuaded by this argument. Pursuant to R.C. 2901.22, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22. While appellant argues he was not capable of forming intent to knowingly cause or attempting to cause physical harm to Officer Gillilan, appellant stipulated on February 11, 2013 to the competency evaluation and was found competent to stand trial. It is undisputed that Gillilan was on duty and was responding to a 9-1-1 call. Gillilan and Nordick both testified that when they attempted to get appellant handcuffed and into the patrol wagon, appellant was continually struggling and kicked Gillilan in the face with his leg. Gillilan identified appellant at trial as the individual who kicked him in the face on May 13, 2012.

{¶34} The evidence presented indicates appellant was combative during the entire time he was with the officers. Appellant was aware his kicking would cause injury as evidenced by his belligerent and aggressive behavior. Based upon the testimony of the officers, we cannot conclude the jury lost its way and created a manifest injustice when it found appellant guilty of assaulting a peace officer. We find sufficient evidence to support the jury's verdict on the assault on a peace officer charge. Appellant's second assignment of error is overruled.

{¶35} Based on the foregoing, appellant's first and second assignments of error are overruled.  The judgment of the Stark County Common Pleas Court is affirmed.

By Gwin, J.,

Hoffman, P.J., and

Wise, J., concur